Rot M. Page, S.
The issue of construction presented herein is as to the time of vesting of a future interest or interests consisting of the remainder of personal property of the estate in accordance with testamentary provisions in relation thereto, as contained in subdivision “ (B) ” of paragraph “ Third ” of the will of the above-named deceased. These, together with the preceding paragraph “ Second ”, are as follows:
‘1 Second: All the rest residue and remainder of my property, both real and personal, of every kind and description, and wheresoever situate, I give, devise and bequeath to my sister, Anna D. Shoemaker, of Binghamton, N. Y. as long as she shall live, with the right to use as much of the property as she shall desire.
‘ ‘ Third: After the death of my sister, if any of such property shall remain, or in case she shall not survive me, or shall die as the result of an accident or disaster common to us both, then I give, devise and bequeath all the rest, residue and remainder of my property, both real and personal, of every kind and description, and wheresoever situate as follows:
“ (A) Any real estate I may own, together with all household furniture and equipment therein, I give, devise and bequeath to my cousin Miss Linona Corey of Binghamton, Broome County, N. Y. to be hers absolutely and forever.
“ (B) All the rest, residue and remainder of my property,' of every kind and description, and wheresoever situate I give and bequeath to Miss Linona Corey of Binghamton, Broome County, N. Y. and Mrs. Minnie Livingston of Bogota, New Jersey, equally, share and share alike, or to the survivor of them. ” (Italics supplied.)
As to any real property of which the deceased died seized, there is no question, for its disposition is unambiguously stated *1037 in the portion of the above-quoted paragraph “ Third ” designated as “ (A) ”.
The issue of construction herein arises because of alleged ambiguity contained in the portion of the above-quoted paragraph “ Third ” of the will designated as “ (B) ”. The reason there is a question as to the construction of this particular testamentary provision is that, of the two remaindermen named therein, one of them, Minnie Livingston, survived the testator but predeceased the life tenant. The other, Linona Corey, now Linona Corey Flower, survived both the testator and the life tenant. The presently contested issue, therefore, is as to whether the said Linona Corey Flower is entitled to take only half of the present remainder, the other half going to the estate of said Minnie Livingston, or whether Linona Corey Flower, as the sole surviving remainderman, takes all.
Primarily, the resolution of this issue is dependent upon a determination of the testator’s intent. In all cases wherein the intent of a testator is clearly and unambiguously stated, there can be no controversial question of construction as to the question of the time of vesting of a future interest or in whom it vested.
It is strongly contended by counsel for the present petitioner that the statement of testamentary intent, as found in the will with which we are presently concerned, is clear and unambiguous to the effect that the remainder of personal property provided therein did not finally vest in anyone during the lifetime of the life tenant, but only “ after the death of my sister,” said Anna D. Shoemaker.
Counsel for the administratrix of the estate of Minnie Livingston, deceased, presents the contention that the above-stated language in portion “ (B) ” is ambiguous, particularly with respect to the final words of the above-quoted paragraph “ Third ” of the will, viz., “ the survivor of them.” Since use of the term “ survivor ”, always, necessarily, involves two or more persons, as counsel contends herein, the use of the term “ survivor ” as presently found, could be either of the testator himself or, if both of them survived the testator, as between the two remaindermen. This lack of clarity as to which of these two possible interpretations of his words was intended by the testator creates ambiguity.
Counsel for the petitioner herein, seeking to support his contention that, under the above-quoted testamentary language, vesting of the remainder was deferred until after the death of the life tenant, has briefed his position very persuasively to the effect that the indicia of testamentary intent as to time of *1038 vesting of the remainder is clear to the effect that the vesting of the remainder of personal property was directed to be deferred so as not to take place at testator’s own death but, rather, upon or “ after ” the death of the life tenant. He argues that the words “ or to the survivor of them ” mean as of the date of death of the life tenant, contending that this construction is rendered free of ambiguity and beyond all question when we consider that all the provisions of paragraph 11 Third ’ ’ are limited upon and conditioned by its opening words, “After the death of my sister,” and that then he, the testator, gave the remainder of personal property to the two named persons. Therefore, neither prospective remainderman could become such until then, if living at that time. The final words of paragraph “ Third “ or to the survivor of them ”, in their present context signify survivorship as between the two remaindermen, and could not possibly mean as between the testator himself and each remainderman respectively. He further contends that this conclusion is reinforced and made inescapable because of the testamentary plan as “ gathered from the four corners ” of the will.
Purely as a matter of balance of probabilities, the petitioner’s contention as to the testator’s intent seems quite as logical and well supported in reason as the conclusion to the contrary. If this were a case of first impression, a conclusion supporting this contention of counsel for the petitioner herein might well be regarded as being just as firmly supported in logic and probability as the counter contention of his adversary representing the respondent herein.
But, despite all these considerations of logic, the word ‘1 survivor ’ ’, as found in the last sentence of the above-quoted paragraph ‘ ‘ Third ’ ’ of the will here in question, does create definite ambiguity as to of whom the testator intended that each of the two named remaindermen, in order to take a beneficial interest, must be the survivor. It could have been as to the testator himself or it could have been as between the two remaindermen.
An attempt to resolve this ambiguity by considering the will as a whole and the testamentary plan or scheme capable of being perceived therefrom does not yield a solution.
Where, as here, we find words of present gift such as, “I give, devise and bequeath ”, etc., especially where, as here, the designated beneficiaries are named individuals, adverbs of time such as those found herein, viz.: “ after ”• — ■“ then ”, do not mean that vesting is to be deferred beyond the death of the testator, and their full signification is to make reference to the *1039 time when remaindermen, in whom, at the taking effect of the will, a future interest or interests became vested, would come into possession of present interests. (Connelly v. O’Brien, 166 N. Y. 406; Matter of Krooss, 302 N. Y. 424.) In any such case, the term “ survivor ” means survivorship of the testator himself.
In such a case as is here presented, this interpretation of his usage of adverbs of time and of the term “ survivor ” is, quite inflexibly, regarded as the expression of a testator’s intent that vesting would be at his death, as a construction of such intent is to be derived from the language he used in expressing it. The guiding star of testamentary intent is not disregarded. But, whether or not the above-mentioned established rules of construction result in a determination of what, in truth and in fact, the testamentary intent was, at least, they do resolve the ambiguity. Especially where the will is drawn by an attorney, such construction is regarded as being more likely to reflect the true intent of the testator. This conclusion is further supported by the axiom that a will speaks as of the date of death of its author, together with the fondness of courts of bringing into being a vesting of any property interest at the earliest possible moment.
The following group of citations comprises a few of the great multitude of cases illustrative of vestings of future interests determined to have occurred immediately upon the taking effect of wills, viz.: Matter of Krooss (302 N. Y. 424, supra); Moore v. Lyons (25 Wend. 119); Matter of Weaver (253 App. Div. 24, affd. 278 N. Y. 605); Matter of McParlan (169 Misc. 1027); Matter of Watson (262 N. Y. 284); Connelly v. O’Brien (166 N. Y. 406, supra).
However, in cases wherein, from other wording contained in the instrument under construction, some other quality has entered into it, such as language to the effect that, in relation to the devolution of a remainder, the concept of futurity in vesting appears to have been in the testator’s mind, as disclosed by some expression other than the words of present gift, such as the category of cases illustrative of the “ divide and pay over ” rule, the situation as to the vesting of a remainder is different. Another method of accomplishing the same effect is by way of some qualification such as the testator’s having designated remaindermen as a class and having used language indicating that such a class is not to be determined and assembled until after the termination of an intervening, or, as it could be, not more than two intervening legal or equitable life interests. An example of this indication of the testator’s having *1040 intended a deferment in vesting is clearly shown in cases where he qualifies the class of beneficiaries by such an expression as, then living ”, the “ then ” clearly referring to the time of the termination of the intervening interest or interests.
The following are cases in which the devise or bequest was not couched in words of present gift to named individuals and in which it was determined that the vestings of future interests were deferred until the termination of an intervening legal life estate or trust: Matter of Buechner (226 N. Y. 440); Salter v. Drowne (205 N. Y. 204); Bisson v. West Shore R. R. Co. (143 N. Y. 125); Goebel v. Wolf (113 N. Y. 405); Teed v. Morton (60 N. Y. 502); Matter of Smith (131 N. Y. 239).
Most of the cases cited by the petitioner are of this category and, therefore, are not authorities in support of her contention herein.
In dealing with construction cases involving questions as to time of vesting, quite frequently, courts have taken occasion to remark upon the vexatiousness and troublesomeness of such issues of construction. It surely is true that these questions do arise with surprising frequency. During only the past 10 years, in this court alone, construction issues of the type under consideration herein have occurred many times. The following-are two groups of such reported cases (in addition to which there were a number of others which were disposed of without a written decision).
These cases holding that vestings of remainder interests were immediately upon testators’ deaths are: Matter of Wilkinson (114 N. Y. S. 2d 423); Matter of Clonney (63 N. Y. S. 2d 705); Matter of Douglas (195 Misc. 661); Matter of Walker (195 Misc. 793); Matter of Van Winkle (86 N. Y. S. 2d 597); Matter of Becker (127 N. Y. S. 2d 558).
Cases in which it was held that the vestings of remainder interests were deferred to the termination of intervening legal or equitable life estates are: Matter of Robinson (187 Misc. 489); Matter of Bartlett (76 N. Y. S. 2d 247); Matter of Becker (206 Misc. 454); Matter of Maine (190 Misc. 226); Matter of Butts (4 Misc 2d 430).
The wills under construction in most of the above-cited cases, apparently, were drafted by competent attorneys, but yet, perhaps by reason of not having- had occasion to have been so strongly impressed as this court has been, they permitted ambiguities such as are found in the present case to slip by them, to the detriment of some of testators’ intended beneficiaries.
*1041 The cure of all this could be very easy and simple. Nearly every attorney has occasion to perform more or less testamentary draftsmanship. If, in his consideration of developing his art along this line and impressed with our common experience of so frequently finding these ambiguities resulting in proceedings for construction, he were to have it in mind to insert a simple provision that would be beyond all question by having a testator say, ‘ ‘ I intend and direct that the vesting of said remainder shall be, etc. ’ ’ in whatever form the testator desires, the great number of cases of this type, except in occasional instances of “home-made” wills, could be almost completely eliminated.
A well-developed expertness in draftsmanship, including a studied knowledge of leading cases dealing with construction questions, together with a flair for clarity in the use of the English language, could pretty much eliminate the arising of construction issues — not only as to vesting remainders, but as to issues of construction in all varieties of legal instruments. In any which are very involved or complicated, a consultation between two such experts would not be amiss. Just as World War I was to end all wars, so this should (but will not) be a decision to end all decisions in relation to the vesting of future interests.
In accordance with the above-cited and many other compelling authorities, our conclusion in this case is that the devolution of the remainder, as stated in the “ (B) ” portion of the will here in question is one half thereof to the estate of the remainderman who did not survive the life tenant and the other one half to the petitioner herein.
Settle decree accordingly.