In re ESTATE OF HERMAN BIERSTEDT, deceased.

WALTER BIERSTEDT, appellant, v. META BERNINGHAUS et al., appellees.

No. 50760.

(Reported in 119 N.W.2d 234)

JANUARY 15, 1963.

Hutchison & Hutchison and James H. Andreasen, all of Algona, for appellant.

Linnan, Lynch & Straub, of Algona, for appellees.

THORNTON, J.—This is an action to construe the will of Herman Bierstedt, deceased. Mr. Bierstedt executed his will in 1949. The will was filed for probate February 14, 1961. In pertinent part it provided:

"SECOND. * * * I * * * bequeath to my daughter Matae Berninghaus One Dollar, as she has already been provided for.

"THIRD. To my son Theodore Bierstedt, I * * * bequeath One Dollar, as he has received help and gifts from me heretofore.

"FOURTH. To my son Walter Bierstedt, I * * * devise * * * [a described 80 acres], subject to existing Liens.

"FIFTH. Any personal property remaining after the above provisions have been taken care of, shall be divided equally between my three children, as named above."

On the petition of the three children named, the court on November 30, 1959, found Mr. Bierstedt to be a person of

unsound mind and incompetent to manage his affairs and care for his property and appointed a bank as his guardian. The court's order was, "* * * It Is Now Ordered, Adjudged And Decreed that the defendant, Herman Bierstedt, is now judicially declared to be a person of unsound mind and wholly incompetent and unable to manage his affairs or take care of his property * * *" thus creating a presumption of lack of testamentary capacity. Ward v. Sears, 247 Iowa 1231, 1241, 78 N.W.2d 545; Olson v. Olson, 242 Iowa 192, 212, 46 N.W.2d 1, 12, 40 A. L. R.2d 1; In re Estate of Willer, 225 Iowa 606, 281 N.W. 155; and citations in each. No other evidence bearing on testamentary capacity was offered. See Bishop v. Fullmer, 112 Ohio App. 140, 175 N.E.2d 209. In the guardianship it became necessary to apply for authority to sell the 80 acres described in paragraph four of the will to care for the ward. The 80 acres were sold on contract with court approval. The sale price was $25,000 payable in installments and by the assumption of a mortgage. After Mr. Bierstedt's death February 3, 1961, the guardianship was closed and the guardian assigned the contract showing a balance due thereon of $13,384.95 to the executor.

The question presented has not been passed on by us. It is, Does the sale of the real estate by the guardian, with court approval, while the testator was incompetent, work an ademption of the specific devise to the son, Walter? The trial court held the devise was adeemed.

Appellant does not contend the devise is not adeemed to the extent the proceeds of the sale were used for the care of the ward and the expense of the guardianship. He claims only the balance due on the contract with the purchaser.

■ I. The term ademption was originally applied only to wills of personalty. It is now applied to both wills of personalty and realty. See section 633.15, Code of Iowa, 1962; Warren, "The History of Ademption", 25 Iowa Law Review 290; and Lewis v. Hill, 387 Ill. 542, 56 N.E.2d 619. We so use it. In re Estate of Sprague, 244 Iowa 540, 57 N.W.2d 212; In re Estate of Keeler, 225 Iowa 1349, 282 N.W. 362; and see In re Estate of Brown, 139 Iowa 219, 224, 117 N.W. 260. The same meaning

is attached to the term ademption in either case and the same principles apply.

Both parties agree the devise of the 80-acre farm to Walter is a specific devise. Henderson v. Green, 34 Iowa 437, 439, 11 Am. Rep. 149. It is also clear if the testator had disposed of the 80 during his lifetime while competent, the devise would be adeemed. In re Estate of Sprague and In re Estate of Keeler, both supra. This is the majority rule. See 57 Am. Jur., Wills, page 1085, section 1585; page 1087, section 1586; and annotation, 51 A. L. R.2d 770.

Ademption means "a taking away". For our purpose if the particular piece of property, real or personal, is not found in the estate and the bequest or devise cannot be fulfilled there is said to be an ademption. The history of the doctrine of ademption shows there has been a change of thought as to the proper basis for the doctrine through the years. Warren, "The History of Ademption", 25 Iowa Law Review 290, 325.

The change has been from looking to the intention of the testator to the strict identity of the subject of the gift and back to what may be called a modified intention theory. Reference is made to the identity rule and the intention rule by most authorities. See Warren, "The History of Ademption", 25 Iowa Law Review 290; 4 Page on Wills (Lifetime Ed. 1941), chapter 43, sections 1527, 1530; and annotation, 51 A. L. R.2d 770.

Where the testator is competent and disposes of the subject of the gift, the gift is adeemed; where the testator is incompetent and the subject of the gift is sold by a guardian with court approval, the gift is only adeemed to the extent the proceeds are used for care and maintenance of the ward. The only question of intention involved is the opportunity of the testator to change the will. This opportunity is denied the incompetent testator. No question of his intentions other than expressed in the will is involved. Where, as here, the testator is incompetent and under guardianship, a sale by the guardian does not work an ademption so far as the proceeds are traceable. This is the majority view in this country. Bishop v. Fullmer, 112 Ohio App. 140, 175 N.E.2d 209; Walsh v. Gillespie,

338 Mass. 278, 154 N.E.2d 906; Wilmerton v. Wilmerton, 7 Cir., 176 F. 896, certiorari denied 217 U. S. 606, 30 S. Ct. 696, 54 L. Ed. 900; Lewis v. Hill, 387 Ill. 542, 56 N.E.2d 619; Buder v. Stocke, 343 Mo. 506, 121 S.W.2d 852; Morse v. Converse, 80 N. H. 24, 113 A. 214; Duncan v. Bigelow, 96 N. H. 216, 72 A.2d 497; In re Estate of Cooper, 95 N. J. Eq. 210, 123 A. 45, 30 A. L. R. 673; Roderick v. Fisher, 97 Ohio App. 95, 122 N.E.2d 475, 51 A. L. R.2d 762; Annotation, 51 A. L. R.2d 770; Irwin Estate, 23 Pa. D. & C. Rep.2d 33; Warren, "The History of Ademption", 25 Iowa Law Review 290, 324, 325; and 4 Page on Wills (Lifetime Ed. 1941), section 1530, pages 387, 388.

A contrary view is taken in Canada and England, see annotation, 51 A. L. R.2d 781, in New York, In re Estate of Ireland, 257 N. Y. 155, 177 N.E. 405, and in Vermont, In re Barrows' Estate, 103 Vt. 501, 156 A. 408. In Pennsylvania the latest case from that state to come to our attention is Irwin Estate, supra, decided in 1960, which follows the majority view citing annotation, 51 A. L. R.2d 770.

The question under consideration is governed by statute in a number of states. See annotation, 51 A. L. R.2d 770, 800; Shure v. Dahl (N. D. 1957), 80 N.W.2d 825, 62 A. L. R.2d 953, annotation on 958; and Warren, "The History of Ademption", 25 Iowa Law Review 290, 325. We have no such statute.

II. Appellees vigorously urge we are committed to the identity theory and the court does not have the power to substitute the proceeds for the real estate specifically devised. This argument is based on In re Estate of Sprague, 244 Iowa 540, 57 N.W.2d 212; In re Estate of Keeler, 225 Iowa 1349, 282 N.W. 362; In re Estate of Miller, 142 Iowa 563, 119 N.W. 977; In re Estate of Bernhard, 134 Iowa 603, 112 N.W. 86, 12 L. R. A., N. S., 1029; In re Brann, 219 N. Y. 263, 114 N.E. 404, L. R. A. 1918B 663; and In re Estate of Ireland, 257 N. Y. 155, 177 N.E. 405. Only the Ireland case deals with a testator under guardianship. In the other cases the testators were competent. In In re Brann, supra, at page 269 of 219 N. Y., pages 405, 406 of 114 N.E., page 665 of L. R. A. 1918B, is this statement, "* * * The opportunity to change it was given when a codicil was

signed; and with knowledge of the condition of the estate, the clause was left the same. * * *."

This court has referred to the intent of the testator in the above cases as follows. In the Bernhard case at page 607 of 134 Iowa, page 87 of 112 N.W., we said:

"* * * The contract under consideration is conclusive evidence of the fact that Bernhard intended to dispose of this land and to receive the purchase money, if the vendees named therein determined to take the land and pay the purchase price. It is evident, therefore, that he could not have intended that his will should operate upon the land, and that it should go to the appellants in virtue of the eighth clause thereof."

In Keeler, at page 1357 of 225 Iowa, page 366 of 282 N.W., after quoting from In re Braun, supra, as pointed out, we said,

"Mrs. Keeler had knowledge of the condition of her estate after she canceled the note and mortgage. She knew that she had taken title to this real estate but she did not change the will although she lived approximately a year and a half after she took title."

We also pointed to dissatisfaction with the result, "* * *. if testatrix had known the consequences we feel she would have changed her will." (Page 1359)

In Sprague, at page 546 of 244 Iowa, page 216 of 57 N.W.2d, we said:

" 'Mrs. Sprague had knowledge of the condition of her estate after she entered into the contract to sell the Cedar Rapids real estate. She knew that she had acquired an undivided interest in a contract to sell the real estate and yet she did not change her will, although she lived for some considerable time thereafter.' "

In the Miller case no reference is made to the intent of the testator. The contract to sell the real estate in that case was entered into by the testatrix before she executed her will.

The least that can be said for the above references set out as to the intent of the testator is that they were in support of the decision that the conversion by the testator of the subject of the specific devise or legacy worked an ademption. Neither they, nor

statements bearing on the question of conversion, commit us to the identity rule to the exclusion of following the majority view in the case of a sale by a guardian of an incompetent testator.

In re Estate of Ireland, 257 N. Y. 155, 158, 177 N.E. 405, 406, the leading American case favoring the minority view, does not rest solely on the identity rule, but pointed out the probable intent of the testator in that the residuary legatees were the testator's children and the specific legatee a stranger. This case also contains the statement:

"In the absence of statute there is no power in the courts to change a specific into a general legacy or turn over the balance of the proceeds derived from the sale of the specific property to the legatee in place of the particular thing intended to be given."

No authority is cited for this statement, though Professor Warren cites it with approval, 25 Iowa Law Review 290, 325. The fact that some states and England have statutes providing that, " 'a sale of [land] under an order in lunacy would not adeem a specific legacy so far as the proceeds remain unapplied at the lunatic's death.' ", 25 Iowa Law Review 290, 324, does not support the statement of the New York court. The English statute was enacted because the court had refused to adopt what is now the American majority view. See Walsh v. Gillespie, 338 Mass. 278, 154 N.E.2d 906, 909.

The cases cited herein as following the majority or intention rule are based on the principle that to hold otherwise would allow the guardian, either intentionally or unintentionally, to disrupt the dispositive scheme of the testator as evidenced by his last competent act in relation to the specific devise. The Missouri court in Buder v. Stocke, 343 Mo. 506, 520, 121 S.W.2d 852, 857, said:

"The weight of authority, with which the decisions in this State agree, is against holding that an ademption has resulted, from the dealings of a guardian of an insane or incompetent testator with his ward's property, where the physical facts make it possible to hold otherwise."

In this case it is clear the testator did not intend his daughter, Meta, or son, Theodore, to share in the 80-acre farm,

he had helped or otherwise provided for them. The proceeds of the guardian's sale are unmistakenly traceable in the real-estate contract. To hold the devise is wholly adeemed would be unjust. We hold the devise to Walter is only adeemed to the extent the proceeds of the sale were used for the care of the testator and the expenses of the guardianship and that the balance of the proceeds of the sale, represented by the real-estate contract, shall be distributed to Walter under the fourth paragraph of the will.

The adoption by us of the majority view on the question presented does not represent any change of position as to the doctrine of ademption where the subject of the specific devise or bequest is sold or otherwise disposed of by a competent testator. Our rulings in the Keeler, Sprague and Bernhard cases, supra, are sound and we adhere to them. We have simply followed the prevailing view as to ademption by the acts of a guardian of an insane or incompetent testator with his ward's property.

The case is reversed and remanded for an order in conformity herewith.—Reversed and remanded.

All JUSTICES concur except STUART, J., who takes no part.