ELLA J. STAKE, appellant, v. WALTER COLE, as Executor of the Last Will and Testament of Jennie Cole, deceased, and BARBARA DAVIS and DOROTHY DEAL, appellees.

No. 51595.

(Reported in 133 N.W.2d 714)

595

MARCH 9, 1965.

Luther M. Reading, of Jefferson, for appellant.

Richardsons, of Jefferson, for appellees.

GARFIELD, C. J.—This is an action for declaratory judgment presenting a question of ademption, in whole or in part, of a specific devise of realty to plaintiff. Following trial in equity the court held there was an ademption of the devise and plaintiff has appealed.

Jennie Cole made her will September 15, 1948. After the usual direction to pay debts and expenses, she devised 98 acres of land to her niece Barbara Cole Davis, and her undivided fourth interest in 128 acres to another niece Dorothy Cole Deal. To her sister, Ella J. Stake, she devised her homestead in Fort Dodge

and its contents. The will directs that war bonds held by testatrix, not in joint ownership, be divided between her two brothers Walter and Wilber Cole and a Mrs. Alice Booth, not related to testatrix. The rest of her estate was to be divided equally between the two nieces above named. Walter Cole was nominated executor.

A codicil dated December 10, 1951, recites, so far as material, that the land devised to the niece Dorothy Cole Deal had been sold and she is to have, out of the residuary estate, a sum equal to what testatrix received therefor.

A guardian was appointed for testatrix as mentally incompetent on May 22, 1954, and she remained under guardianship until her death August 29, 1962. On July 20, 1954, the guardian petitioned the district court for authority to sell the homestead devised to the sister, Ella J. Stake, to obtain funds to provide for care of the ward who was confined in a private mental institution. The petition was set for hearing on August 13, original notice thereof served on the ward and a guardian ad litem appointed for her who filed answer. On August 13 the court ordered the sale "for the purpose of obtaining funds with which to support said ward."

On February 10, 1955, the guardian reported a contract for sale of the Fort Dodge dwelling for the appraised value of $10,000. The sale was duly approved by the court and consummated by the guardian. On March 17, 1955, the guardian received $342.81 upon sale of the furniture in the dwelling and reported it, with his other doings, to the court. On May 27, 1955, the court approved the report. In the present action the trial court held sales of the dwelling and furniture and expenditure of the proceeds for care and keep of the ward worked an ademption of the specific devise to plaintiff, Ella J. Stake.

Plaintiff's petition alleges none of the funds received from the two sales "were necessary to be used for care and keep of the ward, all the proceeds thereof were on hand at the ward's death and were turned over to the executor of her estate by her guardian." Prayer of the petition is for a declaration that a trust exists in plaintiff's favor on $10,342.81 now in the executor's hands as proceeds of the sale of the specifically bequeathed prop-

erty and that the nieces Barbara Cole Davis and Dorothy Cole Deal have no rights to said sum.

Upon the trial plaintiff offered in evidence the court files in the guardianship and estate proceedings and rested. Defendants, executor and nieces offered testimony of a meeting in the guardian's office in Jefferson in July 1954 attended by the ward's two brothers Walter and Wilber, plaintiff-sister, one of the nieces and the guardian, at which it was determined by all present the Fort Dodge house should be sold; also that following the meeting they all went to Fort Dodge where plaintiff looked over the furniture and took what she wanted. Defendants also offered in evidence, subject to plaintiff's objection, two exhibits. We think the objection was good and hence disregard the exhibits. They are relatively unimportant.

On rebuttal plaintiff admitted she attended a meeting in the guardian's office in Jefferson in July 1954, at which the two brothers were present, and went to Fort Dodge with her husband and wife of a brother "she supposed to view the property." Plaintiff denied sale of the realty or personalty was discussed or that she gave her consent at the meeting that the house be sold and the funds intermingled. Plaintiff did not deny she looked over the furniture and took what she wanted.

The trial court's findings of fact, conclusions of law and decree were filed over 15 months after submission of the case. No explanation appears for this regrettable delay. The court found the proceeds from sale of the Fort Dodge home were expended for care and keep of the ward. The conclusions of law state that if any funds from the sale remained in the guardian's hands plaintiff would be entitled to a declaratory judgment therefor under our decision in In re Estate of Bierstedt, 254 Iowa 772, 119 N.W.2d 234; however, since the funds were expended plaintiff is not entitled to such declaration.

I. The burden of plaintiff-appellant's argument is that it was not necessary to spend the proceeds of the sale of the dwelling and its contents and they should not have been so expended because, it is said, the ward owned other property, not specifically bequeathed, which was available for her care. Plaintiff admits

the money received for the dwelling and furniture was spent for care of the ward and costs in the guardianship.

There is no question that the devise of the dwelling and its contents is a specific devise.

■ Ademption is sufficiently defined, for present purposes, as a taking away. Where property specifically devised is not found in the estate and the devise cannot be fulfilled there is ordinarily an ademption of the devise. It is clear that if testatrix, while competent, had disposed of the dwelling and contents the devise would be thereby adeemed.

■ Where, however, sale of specifically devised property is made by the guardian of an incompetent testator, with court approval, the devise is adeemed only to the extent proceeds of the sale are used for care and maintenance of the ward and expenses of the guardianship. To the extent the proceeds of the sale are traceable into the hands of the executor there is no ademption. This is the majority rule in this country to which we are committed. In re Estate of Bierstedt, 254 Iowa 772, 775, 776, 119 N.W.2d 234, 236, and citations.

There is a minority rule that, in the absence of statute, a sale of specifically devised property by the guardian of an incompetent testator, under court authorization, works an ademption of the devise and resort by the devisee to any proceeds of the sale may not be had. Bierstedt case, supra; Annotation, 51 A. L. R. 2d 770, 781–785.

Walsh v. Gillespie, 338 Mass. 278, 281, 154 N.E.2d 906, cited in our Bierstedt opinion, contains an excellent discussion of the history of ademption and what we have referred to as majority and minority rules. The Walsh opinion cites the same precedents our Bierstedt decision does as supporting the majority rule that a sale by a guardian of an incompetent testator of specifically bequeathed property does not work an ademption so far as the proceeds are traceable. These citations are followed by this (page 908 of 154 N.E.2d) : "None of these cases takes the position that this principle applies to that portion of the proceeds which have been expended for the support of the ward. It seems to be generally recognized that as to such expenditures the specific legacy is adeemed pro tanto."

In addition to In re Estate of Bierstedt and Walsh v. Gillespie, both supra, plaintiff cites Buder v. Stocke, 343 Mo. 506, 121 S.W.2d 852 (also cited in Bierstedt and Walsh), in support of her principal contention. The Buder opinion contains this, in conflict with plaintiff's position (page 520 of 343 Mo., page 857 of 121 S.W.2d) : "Of course where the bequeathed specific property and everything received for it has completely disappeared from the testator's estate before his death, there could be no other result reached except an ademption or revocation by complete failure of the bequest or devise; as, for example, a sale of the bequeathed property * * * and expenditure of the proceeds for the maintenance of his ward."

6 Bowe-Parker—Page on Wills (1962), section 54.18, page 272, thus summarizes the American decisions on the point under discussion: "In the United States a sale * * * by the guardian of an insane testator works an ademption as far as the proceeds of such sale * * * have been expended for the benefit of testator. If the proceeds of such sale * * * have not been expended for the benefit of the testator and can be traced, it is generally held in the United States that the sale * * * does not adeem a specific devise or legacy; and that the devisee or legatee takes the proceeds as far as they can be traced."

No decision of an American appellate court has been cited or come to our attention which supports plaintiff's contention that because other property of testatrix might have been resorted to for her care and maintenance, sale of the dwelling with court authorization and expenditure of the proceeds for such purpose does not work an ademption of the devise. Such a holding would be contrary to language in the Bierstedt opinion and others cited in support of it.

II. It seems desirable to recite more fully the facts surrounding the guardian's sale of the property devised to plaintiff. His petition for court authority to make the sale states the dwelling is unoccupied, unrented and because of the ward's physical incapacity would not be used for her except for rental or other purposes; that to rent the property would require considerable expenditures which would not materially increase its value; the ward is confined in a private mental institution; there is avail-

able only about enough money to pay her expenses for two months; it would be advantageous to the ward to sell the house rather than lease it, since other property of hers has better income value.

The court order on the petition followed notice and hearing at which the ward was represented as guardian ad litem by the same attorney who now represents plaintiff. The order finds the allegations of the petition are true and the realty referred to should be sold "for the purpose of deriving funds to maintain the ward in a hospital, which expenditures of the guardian are necessary."

The court order approving the guardian's report of sale finds the sale was for the highest price obtainable, is advantageous and should be approved.

The guardian's first report after consummation of the sale states that on account of the extreme and excessive expense in caring for the ward it was necessary for the guardian to apply for sale of the residence and its contents. The order approving the report "finds that in handling the business of said ward it was necessary to sell real estate in Fort Dodge and the household goods."

III. It seems to us plaintiff's contention it was not necessary to sell the dwelling and contents and expend the proceeds for the ward's care and this should not have been done is an unallowable collateral attack on the court orders authorizing and approving the sale.

A collateral attack on a judgment is " 'an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it; * * *. In other words, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral'." Brown v. Tank, 230 Iowa 370, 374, 297 N.W. 801, 803, 804; Anderson v. Schwitzer, 236 Iowa 765, 772, 773, 20 N.W.2d 67, 71, and citations; Reimers v. McElree, 238 Iowa 791, 795, 28 N.W.2d 569, 571; City of Chariton

602

v. J. C. Blunk Constr. Co., 253 Iowa 805, 816, 822, 112 N.W.2d 829, 834, 835, 838.

██ ██ When sitting in probate the district court is a court of general jurisdiction and the same prohibition against collateral attack applies to judgments in probate as to those in law and equity. Anderson v. Schwitzer, supra, and citations. Clearly the order authorizing the sale has the force and effect of a judgment or final adjudication. Ibid; Soppe v. Soppe, 232 Iowa 1293, 1296–1299, 8 N.W.2d 243, 245, 246; In re Estate of DePenning, 244 Iowa 690, 701, 702, 58 N.W.2d 9, 15; In re Guardianship of Laufert, 247 Iowa 1352, 1360, 79 N.W.2d 187, 193.

██ Lewis v. Hill, 387 Ill. 542, 546, 56 N.E.2d 619, 621, cited in In re Estate of Bierstedt, supra, 254 Iowa 772, 776, 119 N.W. 2d 234, 236, contains this: "The county court, in acting upon the petition of a conservator for the sale of his ward's lands, exercises a jurisdiction general in its nature. The question of the necessity or advisability of selling the property is determined by the order of sale and cannot be reviewed collaterally. [Citations] The governing principle in the management of property belonging to a person of unsound mind is the furtherance of his interest. Therefore, his property may be converted from realty into personalty whenever it appears to be for his interest to do so, regardless of the contingent interests of the real and personal representatives or the interests of those who may have the eventual rights of succession."

██ It is true the trial court did not rest its decision nor do defendants seek to uphold it on the ground now suggested. We think the court might well have done so and that the decision may be affirmed here on such ground. We are committed to the rule that we must affirm the trial court if any sufficient basis appears in the record therefor even though the ruling was placed upon a different ground. The burden is on appellant to demonstrate error and this he has not done if the record shows proper support for the ruling complained of. Stover v. Central Broadcasting Co., 247 Iowa 1325, 1330, 1331, 78 N.W.2d 1, 4, and citations; Hot Spot Detector v. Rolfes Electronics Corp., 251 Iowa 647, 653, 102 N.W.2d 354, 360; State v. Hodge, 252 Iowa 449, 470, 105 N.W.2d 613, 625; McMaster v. Hutchins, 255 Iowa 39, 48, 120 N.W.2d 509, 514.

IV. As previously stated, plaintiff's petition alleges all the proceeds from sale of the dwelling and contents "were on hand at the ward's death and were turned over to the executor of her estate by her guardian." It follows from what we say in Division I hereof that if the quoted allegation were proven plaintiff would be entitled to the relief asked. And if it were shown that part of the proceeds of such sales came into the executor's hands plaintiff would be entitled to a declaratory judgment for such part. The trial court so held. Relief was denied, however, because the quoted allegation was not proven in whole or in part and, on the contrary, it appeared the proceeds from the sales had been expended for the ward's care and keep and expenses of the guardianship.

In view of plaintiff's admissions in argument, previously referred to, that proceeds from sale of the dwelling and contents were expended by the guardian for the ward's care and costs of the guardianship, it seems unnecessary to review the trial court's finding to this effect. However, we think the evidence supports the finding.

A verified application of the guardian, dated June 15, 1962 (part of the guardianship file plaintiff offered in evidence), states it was necessary on June 9 for him to borrow $500 on his personal note to pay monthly expenses; after borrowing this sum the guardian then had on hand only $378.95, with necessary monthly expenses of $315, plus doctor bills; the guardian should be authorized to cash a certificate for 521 shares of stock in Investors Mutual, Inc., the proceeds to be used to pay current expenses of the guardianship. On June 20 the court found it appeared necessary to cash the above stock certificate to provide funds for the ward's care, keep and medical expense and ordered the guardian to take such action.

This Investors Mutual stock was then the principal single asset of the ward other than farmland specifically devised by her will. Its value was a little over $10 a share. The guardian's final report, dated September 15, 1962, states that after cashing the stock certificate for $5329.64 and paying the $500 note there was a balance in the guardianship account of $5408.92 (about $80 more than the sum received from the stock). Out of this amount

compensation to the guardian and other costs of the guardianship were paid, as directed by the court, and $4481.92 was paid by the guardian to the executor (about $850 less than proceeds from sale of the stock). As stated earlier, testatrix died August 29, 1962.

When a fiduciary, acting in good faith (and it is not suggested the guardian did not so act) feels compelled to borrow on his own note to provide funds for the ward's care and also to dispose of another asset of the ward to obtain added funds for such purpose there is persuasive evidence that funds coming into his hands more than seven years earlier had been exhausted.

As in most cases of this kind, it was not shown that while the guardianship existed the guardian knew the terms of testatrix' will, nor is it so alleged or contended.

Of course the burden to prove the allegation that proceeds of the sale of the dwelling and its contents came into the executor's hands rested on plaintiff. We must hold she failed to discharge the burden. On the contrary, as plaintiff admits, the proceeds were expended for the ward's care and keep and expenses of the guardianship. The sales by the guardian, as authorized by the court, and expenditure of the proceeds in the manner directed and indicated worked an ademption of the devise to plaintiff.

 V. Plaintiff calls attention to the order in which legacies which are mere bounties (not based on a consideration) abate where the estate is insufficient to pay all obligations and legacies in full. The rule applied in such situations is that, unless the will expresses a contrary intent, legacies abate in this order: 1) residuary legacies, 2) general legacies, and 3) specific legacies. In re Estate of Van Wechel, 241 Iowa 513, 516, 41 N.W.2d 694, 696, and citations; In re Estate of Maske, 243 Iowa 1394, 1397, 55 N.W.2d 474, 475, 36 A. L. R.2d 285.

· The general rule for abatement of legacies has no application here. The question presented is one of ademption. The rule of ademption by alienation or extinguishment of a testamentary gift ordinarily applies only to a specific bequest. Indeed it is frequently said the distinguishing feature of such a bequest is its liability to ademption "for it can only be satisfied by the

thing bequeathed." Walsh v. Gillespie, supra, 338 Mass. 278, 279, 154 N.E.2d 906, 908; 57 Am. Jur., Wills, section 1582; 96 C. J. S., Wills, sections 1172, 1173; Annotation, 63 A. L. R. 639.

VI. Plaintiff also calls attention to sections 643 and 644 of our new Probate Code, chapter 326, Laws of the Sixtieth General Assembly, which provide:

"Disposal of will by conservator. When an instrument purporting to be the will of the ward comes into the hands of a conservator, the conservator shall immediately deliver it to the court.

"Court order to preserve testamentary intent of ward. Upon receiving an instrument purporting to be the will of a living ward under the provisions of section 643, the court may open said will and read it. The court with or without notice, as it may determine, may enter such orders in the conservatorship as it deems advisable for the proper administration of the conservatorship in light of the expressed testamentary intent of the ward."

The new Probate Code took effect January 1, 1964 (section 2). This action was commenced January 2 and tried March 27, 1963, before the Probate Code was enacted. The guardianship was closed before the action was begun. It is not claimed the quoted provisions are applicable to the present action but it is said they show the legislature had in mind such a problem as we have here. This may be conceded for purposes of this appeal. Of course the present action must be considered under the law as it stood before enactment of chapter 326, Laws of the Sixtieth General Assembly. In re Claim of Blackman in Hunt's Estate, 256 Iowa 1076, 1086, 129 N.W.2d 618, 624.

We have no occasion to decide whether a different conclusion should be reached if the new Code were applicable and refrain from doing so. We may note, however, as before indicated, there is no evidence or contention the will of testatrix came into the hands of the guardian prior to her death. Also that section 647 of chapter 326 (60th G. A.) confers broad powers upon conservators subject to court approval after hearing, including the power (5) "To do any other thing that the court determines to be to the best interests of the ward and his estate."

The decision appealed from is correct and it is—Affirmed.

All JUSTICES concur.