In the Matter of the **ESTATE** of Emma L. **MIGUET**, Deceased.

No. 54271.

Supreme Court of Iowa.

March 11, 1971.

510

A. F. Craig, Jr., of Craig & Roberts, Independence, for appellant.

Greif & Klotzbach, Independence, for appellee.

RAWLINGS, Justice.

Emma L. Miguet died testate. The executors of her estate filed a final report to which one legatee interposed objection. From decree entered by trial court the executors appeal and objector cross-appeals. We affirm in part, reverse in part, and remand.

Testatrix died December 9, 1966, seized of certain property including two farms. The tract instantly involved is specifically described in what is designated paragraph

Fourth of the will, infra. For convenience and brevity this realty is hereinafter referred to as "the farm".

Decedent was survived by four daughters and at least one granddaughter, Noel Mary Skarpmoen, the objector. Her mother was Ella Jane (Miguet) Skarpmoen, deceased.

The instant will was admitted to probate without challenge. In material part it provides:

Opened, filed & publicly read this 13th day of Dec. 1965
Betty Cameron
Clerk of District Court

FILED FOR RECORD 9700
BUCHANAN COUNTY IOWA

BETTY CAMERON
CLERK OF THE

Will and Testament

Of Emma L. Miguet, of Independence, Buchanan County, Iowa.

First:— It is my wish that all my debts and expenses be paid.

Second: I had 5 daughters, Myra Miguet Sinram, Caroline A Goss, (Norma) Modesta Koon, Julia Lucille Shannon Ella Jane Skarpmoen.

Third: Ella Jane Skarpmoen, died August 26. 1955 left 1 daughter Noel Mary Skarpmoen.

Fourth: Ella Jane Skarpmoen, borrowed, money. I Emma L Miguet put a mortgage on my farm in Byron Township Buchanan County Iowa. The Northeast quarter 4 of section Nineteen (19) and the east half (½) of southeast quarter (4) of section Eighteen (18) Township Eighty nine (89) north, Range Eight (8) west of the 5th P.M. in Buchanan County Iowa.

Fifth: when this farm is sold, The borrowed money taken out. Noel Mary Skarpmoen will get ⅕ of share left, by her mother Ella Jane Skarpmoen. after all debts are paid.

Sixth: All the other property I have, to go to my 4 daughters. Myra Miguet Sinram, Caroline Miguet Goss, Modesta Miguet Koon, Julia Lucille Miguet Shannon. 200 acres in Washington township, with ½ of stock and grains on this 200 acre and ½ stock and grains on Byron township farm.

My last will: November 10. 1960.

I hereby nominate Emma L. Miguet. as my Executors. Caroline Goss Vincent Shan... Nov. 25. 1960 Emma L. Miguet.

- 2 -

We, the undersigned, at the request of Emma Miguet, of Independence, Buchanan County, Iowa, well known to us, hereunto affix our signatures as witnesses, to the aforesaid document presented to us by the said Emma Miguet who stated she has signed same as her last Will and Testament.

Dated this 25th day of November, 1960.

_____    _Independence, Iowa_
First Witness                       Address

_____    _Independence, Iowa_
Second Witness                      Address

[A3903]

---

By their final report the executors took the position that after payment of $52,077.22 total debts, estate expenses and other deductions, the one-fifth share out of farm sale proceeds due to Noel the granddaughter, is more than offset by the "borrowed money" ($12,000) referred to in the will, *supra,* with interest. Resultantly the executors assert Noel is entitled to nothing from this estate.

Prior to hearing on Noel's objections the parties entered into this evidentiary agreement:

"It is stipulated that Emma L. Miguet died December 9, 1966, and that the Will was dated November 10, 1960. It is further stipulated that the total amount of the Estate reported for inheritance tax purposes was $182,058.10, and that the farm in question, described in the Will, located in Byron Township, was sold at public auction for $80,880.00. It is stipulated that a mortgage was made by Emma L. Miguet to the Prudential Life Insurance Company, which mortgage was recorded March 22, 1950, at Book 284, Page 193, in the office of the Buchanan County, Iowa Recorder, and that this mortgage was released in Book 335, Page 208, on the 24th day of March, 1965, and that said mortgage was in the amount of $20,000.00. It is stipulated that Noel Skarpmoen is over the age of Twenty-One (21) years at this time. It is stipulated that Emma L. Miguet, Decedent, during her lifetime was one of the Executors of the John Wise Estate, and filed a claim in the John Wise Estate for money loaned John Wise. A special administrator was appointed to investigate the matter and act on the claim, and he reported to the Court that Emma Wise Miguet borrowed money from Prudential Life Insurance Company and mortgaged a farm individually owned by her in the amount of $20,000.00. That said loan was completed on or about the 20th day of March, 1950. That of the $20,000.00 received from Prudential Insurance Company, Emma Wise Miguet loaned to John Wise the sum of $19,000.00 on or about the 22nd day of March, 1950. That on the 30th day of July, 1956, the Court approved the report of the special administrator and allowed the claim of Emma Miguet in the John Wise Estate."

Other material facts will be later considered.

Trial court decreed the aforesaid "borrowed money", and, as best determined,

some debts and estate expenses be deducted from the farm sale price, leaving a net of $47,081.96 out of which Noel was entitled to receive one-fifth or $9,416.39.

The executors here contend trial court erred in deducting the "borrowed money" plus accrued interest from the farm sale proceeds rather than charging it against Noel's distributive share, and in deducting from such proceeds only part of testatrix' debts and estate expenses.

On cross-appeal Noel claims trial court's interpretation of the will and resultant determination regarding distributive rights to the farm sale fund is erroneous as to debts and expenses deducted therefrom.

Although the matter before us was not initiated as a declaratory judgment proceeding, we are, in effect, called upon to interpret decedent's self-prepared testamentary instrument.

I. Despite an assertion by executors to the contrary, this is not a will contest. The Code 1966, Sections 633.308–633.320; In re Estate of Ditz, 255 Iowa 1272, 1278–1279, 125 N.W.2d 814; Smith v. Negley, 304 S.W.2d 464, 468 (Tex.Civ.App.); Black's Law Dictionary, Revised Fourth Ed., page 1773.

Neither are we confronted with an action for involuntary appointment of guardian or establishment of a contested claim.

This matter was, therefore, statutorily triable as in equity. The Code 1966, Section 633.33. It is accordingly reviewable de novo. Ia.R.Civ.P. 334, 344(f) (7); In re Estate of Luke, 184 N.W.2d 42 (Iowa), opinion filed February 9, 1971; In re Estate of Sheimo, 261 Iowa 775, 778, 156 N.W.2d 681; In re Estate of Thompson, 164 N.W.2d 141, 146 (Iowa).

Finally, on this subject, our review is confined to those propositions properly assigned and argued. In re Estate of Martin, 261 Iowa 630, 634, 155 N.W.2d 401; Allerton-Clio-Lineville Community School District v. County Board of Education of Wayne County, 258 Iowa 846, 848, 140 N.W.2d 722.

II. Inceptionally it is well settled, in cases such as this, (1) testator's intent is the polestar and if expressed must control; (2) that intent must be gleaned from a consideration of, (a) all language contained within the will, (b) the scheme of distribution, (c) circumstances surrounding testator at time the will was executed, (d) existing properly established facts; and (3) technical rules of construction should be resorted to only if the will is clearly ambiguous, conflicting, or testator's intent is for any reason uncertain. In re Estate of Twedt, 173 N.W.2d 545, 549 (Iowa). See McCarthy v. McCarthy, 178 N.W.2d 308, 310 (Iowa); In re Estate of Staab, 173 N.W.2d 866, 870–871 (Iowa).

Furthermore, in ascertaining a testator's intent, courts may sometimes discard, transpose, or supply words in a will. In re Estate of Ditz, 254 Iowa 444, 448–449, 117 N.W.2d 825. See also In re Estate of Braun, 256 Iowa 55, 60, 126 N.W.2d 318; 95 C.J.S. Wills §§ 612–613; 57 Am.Jur., Wills, § 1153.

And if a testamentary provision is reasonably susceptible to two constructions, one making it void or inoperative, the other rendering it valid and effective, the latter must be accepted, the former rejected. Layton v. Tucker, 237 Iowa 623, 626, 23 N.W.2d 297. See also 95 C.J.S. Wills § 614.

Additionally, punctuation marks may be corrected to obtain a more intelligent understanding of the language used. In re Estate of Gerdes, 245 Iowa 778, 783, 62 N.W.2d 777. See also In re Estate of Thompson, 164 N.W.2d 141, 147 (Iowa); 95 C.J.S. Wills §§ 606–612; 57 Am.Jur., Wills, § 1155; Annot. 70 A.L.R.2d 215.

Also, as stated in the case of In re Estate of Roberts, 171 N.W.2d 269, 272 (Iowa): " * * * the form of the will has no bearing on the intentions of the maker, and we have often held that the arrange-

ment of the will or the order in which its clauses or paragraphs appear is not controlling and may be of little significance since the will must be read and construed as a whole. (Authorities cited)."

We also accord recognition to this pertinent statement of principle in 57 Am. Jur., Wills, § 1150:

"It is frequently recognized that in ascertaining the meaning of words used in a will, a distinction exists between instruments drawn by skilled testamentary draftsmen and those prepared by persons obviously unlearned in the law; words found in documents of the first kind are to be construed with some strictness, with emphasis being placed upon their accepted technical meaning, while the language exhibited in wills of the other sort is to be interpreted liberally with reference to its popular meaning. Thus, the opinion has been expressed that where a will has been drawn by one learned in the law, the words employed will ordinarily be given their accustomed technical meaning, but where it is drawn by a layman the language used may be given the meaning it would commonly have to a person in his situation."

See In re Estate of Clifton, 207 Iowa 71, 77, 218 N.W. 926; 95 C.J.S. Wills § 600b.

III. An examination of the will, *supra*, discloses it is in handwritten narrative form, with paragraph numbers supplied which are actually of little significance.

Paragraph First states: "It is my wish that all my debts and expenses be paid."

■ We are satisfied a variant meaning must be here attributed to use of the words "debts" and "expenses".

As instantly employed, "debts" must have meant, to testatrix, her personal obligations.

See The Code 1966, Sections 633.425–633.426; Nolte v. Nolte, 247 Iowa 868, 878, 76 N.W.2d 881; 97 C.J.S. Wills § 1312.

Then, by specific use in the same provision of the words "and expenses" she clearly recognized other distinguishable and unavoidable obligations not self-initiated. In this area it is evident decedent intended all costs attendant upon last illness, burial and those relating to administration of her estate, including estate taxes and fees, be treated as expenses. See The Code 1966, Sections 633.425, 633.426, 633.449.

Any other interpretation would require that we give the words "debts" and "expenses" a like meaning, or read one of them out of the will despite a definitely expressed contrary desire. See The Code 1966, Sections 633.425–633.426; In re Estate of Evans, 246 Iowa 893, 68 N.W.2d 289; Estate of Brown v. Hoge, 198 Iowa 373, 377–381, 199 N.W. 320.

IV. The executors argue testatrix qualified the foregoing by stating in paragraph Fifth, "after all debts are paid". In other words they contend this phrase, following the bequest to Noel and others in paragraphs Fourth and Fifth, means testatrix wanted all debts *and expenses* referred to in paragraph First, *supra*, be paid out of money obtained from sale of the farm. We cannot agree.

■ As instantly employed the word "after" relates primarily to the matter of time, *not* that farm sale funds stand as the source from which any debts or expenses be paid. See Hastings v. Rathbone, 194 Iowa 177, 187–188, 188 N.W. 960; In re Shoemaker's Will, 5 Misc.2d 1035, 161 N.Y. S.2d 294, 298.

Stated otherwise, decedent neither said nor meant that debts and expenses be paid from the farm sale proceeds, with any sum remaining divided into five parts.

V. That brings us to the matter of priority in payment of debts and expenses.

Significantly, decedent provided in paragraph First that all her debts *and* expenses be paid.

Then in paragraph Fourth she described the farm, and paragraph Fifth states, "When this farm is sold the borrowed money taken out. Noel Mary Skarpmoen will get ⅕ of share left, by her mother Ella Jane Skarpmoen. After all *debts* are paid." (Emphasis supplied).

We are persuaded and now find, decedent initially expressed a natural concern regarding payment of her personal debts and estate administration expenses, and intended they be paid primarily from personalty not specifically devised; if there should be insufficient personal property not specifically devised with which to pay all debts and expenses, then such as were not thus satisfied should be paid from the paragraph Sixth residuum; distribution of paragraphs Fourth and Fifth farm sale proceeds be stayed until payment of all her debts; and if there remained any unpaid personal obligations, resort be then had to property specifically described in paragraph Fourth for payment only of those then unsatisfied. See In re Estate of Hill, 258 Iowa 1186, 1191, 140 N.W.2d 711; Hastings v. Rathbone, 194 Iowa 177, 187–188, 188 N.W. 960. In any event, except as stated *supra,* testatrix expressed no intent that her debts and expenses of estate administration be paid other than as provided by The Code 1966, Section 633.436. See Stake v. Cole, 257 Iowa 594, 604, 133 N.W.2d 714.

It is, of course, understood that if personalty not specifically bequeathed *and* the residuum are insufficient for payment of all expenses, then under the statute last above cited, resort to the paragraphs Fourth and Fifth bequest would be unavoidable.

From this it is apparent testatrix intended payment of her personal debts be at all times accorded priority. See The Code 1966, Sections 633.436–633.437; Stake v. Cole, *supra,* at 257 Iowa 604, 133 N.W.2d 714; 97 C.J.S. Wills § 1317; 57 Am.Jur., Wills, § 1468.

▌ Under existing circumstances it appears trial court erred in deducting any debts and expenses from the farm sale proceeds, and on remand shall redetermine the paragraphs Fourth and Fifth distributive shares in light of the foregoing.

VI. Next to be considered is testatrix' intent with regard to the "borrowed money" phrase found in paragraphs Fourth and Fifth of the will.

▌ Ordinarily repeated use of the same or similar words or terms in a testamentary instrument creates an inference they have a like meaning wherever employed, unless differently appearing in the context, or applied to different subjects. In re Trusts of Young, 243 Iowa 211, 220–221, 49 N.W.2d 769; 57 Am.Jur., Wills, § 1152.

So it is apparent the second reference to "borrowed money" relates to the first such phrase regarding money loaned to Ella Jane Skarpmoen, Noel's deceased mother.

The question then remaining is—from what fund or share did testatrix intend the borrowed money be "taken out"? Did she means it be deducted from the farm sale proceeds prior to any distribution, or offset against Noel's one-fifth distributive share alone?

The executors argue decedent meant Noel's share should be reduced in an amount equal to the sum loaned her mother, with accrued interest. We are not so persuaded.

▌ Unquestionably paragraphs Fourth and Fifth as they relate to the instant problem are of sufficient ambiguity that reference to extrinsic evidence is justified. See Bankers Trust Co. v. Allen, 257 Iowa 938, 944, 135 N.W.2d 607; Widney v. Hess, 242 Iowa 342, 352, 45 N.W.2d 233; 30 Am.Jur. 2d, Evidence, § 1073, at page 219.

The record reveals, total value of the estate for inheritance tax purposes was $182,058.10.

It also appears in 1952 Ella Jane Skarpmoen received a $12,000 loan from decedent. Sometime in February of 1955, the latter

visited the Skarpmoens in Wisconsin. At that time Mrs. Skarpmoen was in very poor health, and died within six months after that visit. During the February 1955 visitation decedent returned the $12,000 note to her daughter, stating the debt was cancelled and forgiven. Thereafter decedent wrote the will now in question.

But that alone is not dispositive. We have held, where a will purports to recite an amount owing to testator by a beneficiary, directing deduction of same in any specified manner, it shall be so deducted even though the indebtedness is less than that stated, or nothing is owing. In re Estate of Kaldenberg, 254 Iowa 1333, 1336–1337, 121 N.W.2d 108; see Annot. 98 A.L.R. 2d 273.

Neither is this determinative. It stands without dispute, Ella Jane Skarpmoen borrowed $12,000 from decedent prior to execution of the instant will. What then did decedent say relative to the prior forgiven obligation? "When this farm is sold the borrowed money taken out. Noel Mary Skarpmoen will get ⅕ of share left * *."

It is of more than minimal importance that the will does *not* state: "When this farm is sold, Noel Mary Skarpmoen will get ⅕ share left after the borrowed money is taken out of her share." Rather, testatrix said, in essence, when the farm is sold the borrowed money shall be taken out and Noel Mary Skarpmoen will get ⅕ of the remainder. This is to us the only reasonable interpretation applicable to the layman's language used. See Henkel v. Auchstetter, 240 Iowa 1367, 1373–1374, 39 N.W.2d 650; In re Estate of Clifton, 207 Iowa 71, 77, 218 N.W. 926; 57 Am.Jur., Wills, § 1150.

In brief, we can only conclude decedent intended the $12,000 "borrowed money" be deducted from the farm sale proceeds before distribution to anyone.

The propriety or wisdom of such a bequest is not for this court to determine. Testatrix, presumably competent at time the will was executed, had the right to do as she wished in effecting a testamentary disposition of her estate. See The Code 1966, Section 633.264; In re Estate of Dobals, 176 Iowa 479, 487–488, 157 N.W. 169.

Also, as disclosed *supra,* if the interpretation urged by the executors were to be adopted, the specific bequest to Noel would be resultantly nullified or made inoperative. We cannot approve the application of any such scheme. See Layton v. Tucker, 237 Iowa 623, 626, 23 N.W.2d 297.

Trial court correctly held the $12,000 "borrowed money", without interest, be subtracted from the farm sale proceeds, not from Noel's distributive one-fifth share.

VII. It is, of course, understood all reasonable costs and expenses, of whatever nature, attendant upon disposition of the farm, must be properly determined, allowed and paid out of proceeds realized from the farm sale, prior to payment of any distributive shares. See The Code 1966, Section 633.102.

VIII. There remains to be considered the mortgage encumbrances placed upon the farm, first by testatrix and later by the conservator.

According to the stipulation, *supra,* Mrs. Miguet borrowed $20,000 from Prudential Life Insurance Company March 20, 1950, for which a mortgage was given. Apparently she then loaned $19,000 to a third party, later recovered from his estate. As best we can determine from the record this sum, when received, was not applied to the mortgage secured debt.

Looking further to the stipulated record we find Vincent Shannon was appointed sole conservator for decedent on April 19, 1962, and so served until her death. Incidentally see The Code 1966, Sections 633.643–633.645; Stake v. Cole, 257 Iowa 594, 605, 133 N.W.2d 714. At time of said appointment there was a balance of $8000 owing on the aforesaid 1950 obligation.

Sometime after Mr. Shannon began serving as conservator he, evidently acting in that capacity, borrowed $20,500 from Farmers State Savings Bank at Independence, for which a mortgage on the farm was given. Out of this sum the $8000 balance due on the 1950 mortgage attended obligation was satisfied. Cf. The Code 1966, Sections 633.117, 633.647(3) (6), 633.649, 633.652. No showing is made as to disposition of the sum remaining from the conservator established $20,500 mortgage secured debt.

In any event trial court deducted from the farm sale proceeds, (1) the $12,000 "borrowed money" discussed above; (2) apparently $1,218.04 total debts; and (3) the conservator created obligation.

Having heretofore disposed of the first two of these enumerated deductions we now turn our attention to the $20,500 mortgage related debt.

As editorially stated in 4 A.L.R.3d 1022, at 1027:

"At common law, before changed by modern statute, the real property of a decedent was, for the most part, not subject to payment of his general debts. Even today the broad principle is recognized in many jurisdictions that the personal property of a decedent is the primary fund for the payment of his debts, and resort will not be had to the real estate until the available personal estate has been exhausted. That the English common law even held the decedent's personal estate liable for the payment of mortgage or other liens upon his real property is not surprising in view of the almost sacred regard for real estate long held in England. However, although land is differently regarded in this country, the ancient common-law rule, in the absence of a modifying statute, has almost invariably been applied not only in the case of a lien upon devised property but also as to encumbered realty passing through intestacy."

See also In re Estate of Hill, 258 Iowa 1186, 1190–1191, 140 N.W.2d 711; In re Estate of Lepley, 235 Iowa 664, 670–671, 17 N.W. 2d 526; In re Estate of Brackey, 166 Iowa 109, 113–116, 147 N.W. 188; 97 C.J.S. Wills § 1316b.

IX. The rule above set forth has, however, been abrogated by statute in several states. Annot. 4 A.L.R.3d 1022, 1049.

In 1964 the Iowa legislature at least modified the foregoing common law concept by enactment of § 633.278, Code 1966, which states:

"When any property subject to a mortgage or other lien is specifically devised, the devisee shall take such property so devised subject to such mortgage or other lien, *unless the will provides expressly or by necessary implication that such mortgage or other lien be otherwise paid.* If there is a testamentary direction to discharge such mortgage or other lien, the rules of abatement specified in section 633.436 shall be applied. The term 'mortgage or other lien' as used in this section shall not include a pledge of personal property." (Emphasis supplied)

This statute is clearly controlling as to any encumbrance assumed, suffered or created by decedent prior to execution of her will regarding real estate specifically devised.

Instantly the bequest of proceeds from sale of the farm comes within the classification of a specific legacy. In re Estate of Carpenter v. Wiley, 166 Iowa 48, 53, 147 N.W. 175. See also 96 C.J.S. Wills § 1129a(4); 57 Am.Jur., Wills, § 1401.

Even so, the foregoing statutory rule is not necessarily applicable to the conservator created 1962 mortgage.

Without question the aforesaid $20,500 lien obligation was not personally incurred by testatrix, having come into existence after appointment of the conservator. Resultantly that could not be the mortgage to

which testatrix referred in paragraph Fourth of her will. She must then have had in mind and alluded only to the 1950 self-created encumbrance.

Under these circumstances Code § 633.-278, quoted above, does not specifically resolve the instant issue. We are satisfied, however, when fairly interpreted, this statute reveals the "mortgage or other lien" provision contained therein, as applied to the case at hand, refers only to such as were knowingly assumed or created by testatrix or which, during existence of the conservatorship, became known to her while competent so that, if desired, she could have changed her will.

That view finds support in this qualifying proviso of § 633.278, *supra*: " * * * unless the will provides expressly or by necessary implication that such mortgage or other lien be otherwise paid." Inferentially this phrase acknowledges intent of a testator is, in such instances, controlling.

We are thus confronted with a situation which may be likened to that commonly presented in cases involving ademption. See Stake v. Cole, 257 Iowa 594, 599, 133 N.W.2d 714; In re Estate of Bierstedt, 254 Iowa 772, 775-776, 119 N.W.2d 234.

As indicated *supra*, where a testator places a mortgage on or creates, assumes or suffers the creation of any lien against realty specifically devised by him, and neither expressly nor by implication provides otherwise in his will, the devisee takes subject to such lien under Code § 633.278, quoted above.

But, except as hereafter provided, if a testator, subsequent to execution of his will is made a ward under conservatorship proceedings and the conservator, without the ward's knowledge while competent, gives a mortgage, or creates or suffers some other lien to be placed against realty specifically devised by the ward, such real estate is not ordinarily subject to the conservator created lien.

Exceptionally, however, where part or all of the funds realized as the result of a conservator created lien upon realty specifically devised by his ward are *lawfully* used by the conservator for, (1) liquidation of any existing ward assumed, created or suffered encumbrance on the real estate specifically devised; or (2) after exhaustion of available conservatorship estate personalty not specifically devised, cf. The Code 1966, Sections 633.643–633.645; or (3) capital improvements upon the specifically devised real estate, then to the extent any such funds are properly shown to have been so utilized a conservator created lien shall stand, *pro tanto,* a lien upon the real estate specifically devised. Cf. The Code 1966, Sections 633.117, 633.647(3) (6), 633.649, 633.652. See also 49 Iowa L.Rev. 638, 685. See Newbury v. McCammant, 182 N.W.2d 147, 150 (Iowa); In re Estate of Bierstedt, *supra*.

On the other hand, if a person, after execution of his will, is made a conservatorship ward and while competent becomes aware of the giving of a mortgage, or creation or sufferance by the conservator of some other lien on realty theretofore specifically devised by the ward, and it is shown the circumstances are such that the ward while competent has opportunity to change his will so as to expressly or by necessary implication provide otherwise but fails to so do, then Code § 633.278, *supra*, becomes applicable.

From this flows the conclusion that absent a provision in testatrix' will, expressly or by implication otherwise providing any balance due on the 1950 mortgage secured debt, with interest, projected to date of testatrix' death must be deducted from the farm sale proceeds.

Unfortunately an examination of the record at hand reveals nothing upon which other determinative criteria above set forth may be applied or evaluated by us.

Confronted with a comparable situation in Daugherty v. Daugherty, 260 Iowa 878,

at 882, 151 N.W.2d 569, at 572, this court said: "Where the evidence is insufficient for the fair de novo determination of an important issue, we can and should return the case for more evidence on the subject. (Authorities cited)." See also Shadle v. Borrusch, 255 Iowa 1122, 1128–1129, 125 N.W.2d 507; 5B C.J.S. Appeal & Error § 1939; 5 Am.Jur.2d, Appeal and Error, § 972. But see Shetter v. Rochelle, 2 Ariz. App. 607, 411 P.2d 45, 46–47.

The necessity of remanding this case for further proceedings and taking of additional evidence is regrettable. We have no doubt, however, as to the propriety thereof in the interests of justice under existing circumstances.

■ X. This action was neither improper nor unnecessarily commenced and pursued. Costs attendant upon this appeal are therefore taxed to the estate to be assessed as part of the expenses of administration thereof. See Court Rule 23.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

All Justices concur.