RODERICK ET AL., EXRS., APPELLEES, *v.* FISHER ET AL.,
APPELLEES; READY ET AL., APPELLANTS.

(No. 5021—Decided March 9, 1954.)

*Mr. A. Glenn McClelland,* for appellees Sam W. Roderick and R. Lee Asbury, executors.

*Mr. John Benson,* for appellee Rose M. Fisher.

*Messrs. Connor & Connor,* for appellants.

WISEMAN, P. J. This is an appeal on questions of law from the judgment of the Probate Court of Franklin County entered in an action to construe the will of decedent, Herbert H. Fisher, and for a declaratory judgment.

The essential findings of fact by the trial court are as follows:

The decedent, Herbert H. Fisher, executed his will on January 17, 1950, and died on October 26, 1952. His will was admitted to probate on November 14, 1952, and on the same day letters testamentary were issued by the Probate Court of Franklin County to Sam W. Roderick and R. Lee Asbury as coexecutors of such

will. Rose M. Fisher is the surviving spouse and the sole heir at law of the testator. Item II of the will provides as follows:

"I give and devise my undivided one-half interest in our home property located at 71 Woodland Avenue, Columbus, Ohio, to my wife, Rose M. Fisher, to be hers absolutely and in fee simple."

In item IV of said will the testator devised the rest, residue and remainder of his property, real, personal or of a mixed nature, in trust for the support and maintenance of his wife for life, and at her death to be distributed to certain named residuary legatees. During his lifetime Herbert H. Fisher and Rose M. Fisher each owned an undivided one-half interest in the real property known and referred to as 71 Woodland Avenue, Columbus, Ohio. On August 28, 1951, the Probate Court of Franklin County appointed R. Lee Asbury as guardian for Herbert H. Fisher, on the ground of physical incompetency, to which Fisher gave his written consent. The guardian filed an action in the Probate Court of Franklin County to sell the real estate known as 71 Woodland Avenue, joining as defendants Rose M. Fisher and Herbert H. Fisher. Rose M. Fisher waived service of summons and entered her appearance and consented to and joined in the sale of such property. Herbert H. Fisher was duly served with summons and was properly before the court, and in fact was consulted and agreed to the sale of the property. On May 19, 1952, the guardian sold the property under order of court and received the proceeds thereof. The guardian distributed one-half of the net proceeds to Rose M. Fisher and retained the other one-half of the proceeds as an asset of the guardianship. A small portion of the net proceeds in the guardianship was used for the support of the ward, and, at his death, the balance of said proceeds amounting to $7,271.80 was turned over to the executors and

as such is readily identifiable as the proceeds of the sale of the real property. Rose M. Fisher, as surviving spouse, elected to take under the will.

Under the facts found, the widow, Rose M. Fisher, contends that the $7,271.80 turned over to the executors by the guardian, and being readily identifiable as the remaining proceeds of the sale of the real property, passed to her under item II of the will, to the exclusion of the provisions in item IV. The residuary legatees contend that there was a revocation or ademption of item II, by virtue of the sale of the real property, and that, therefore, the $7,271.80 becomes a part of the residuary estate under item IV.

The Probate Court found that the sale of the decedent's interest in the property known as 71 Woodland Avenue did not operate as an ademption and did not result in a revocation of item II of the will.

The only assignment of error is that the court below erred in the aforesaid finding.

The factual situation is unusual and the legal question presented is one of first impression in Ohio. Counsel have filed excellent briefs and the authorities cited from other jurisdictions are helpful in determining the question presented.

The courts in the main have adopted either the "identity theory" or the "intention theory." The "identity theory" is defined in 28 R. C. L., 345, Section 341, as follows:

"If the identical thing is not in existence, or has been disposed of so that it does not form a part of testator's estate, at the time of his death, the legacy is extinguished or adeemed, and the legatee's rights are gone. The rule is universal that in order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death, and the nonexistence of the property at the time of the death of testator which has been specifically be-

queathed by will is the familiar and almost typical form of ademption.''

A good explanation of the ''intention theory'' is given by the court in *Wilmerton* v. *Wilmerton,* 176 F., 896, as follows:

''The real question is whether, all things considered, the testator's testamentary disposition did, or did not, remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment that he was able to exercise a testamentary disposition. In that way, and in that way only, we think, can the right of a man to dispose of his property according to his own wishes, exempt from interference, caprice or interest of others, be fully carried out. In that way only can his intention, as embodied in his will, be truly administered.''

We question whether it is necessary in the instant case to adopt and apply either theory to the exclusion of the other. The case law in Ohio does not indicate that the courts of the state have favored one theory over another. Under a given factual situation the intention of the testator may be the controlling factor, and under another state of facts the application of the identity theory may be favored and sufficient for a determination without striving to ascertain the intention of the testator. It is interesting to note also that in 4 Page on Wills (Lifetime Ed.), 382, Section 1527, the author in discussing the modern theory states:

''For these reasons, it is now held that the sale, destruction, or collection, of the bequest or devise, adeems it without regard to the actual intention of the testator. This is justified, in part, because of the confusion which would arise in attempting to determine the intention of the testator; and in part, because, with the sale, collection, and the like of the bequest, there

is nothing in existence which conforms to the gift in the will.''

In Ohio, without question, when a testator wholly divests himself of the property devised in a will, revocation of the devise takes place. Section 10504-51, General Code (Section 2107.36, Revised Code); *Lewis, Admr.,* v. *Thompson,* 142 Ohio St., 338, 52 N. E. (2d), 331. If the testator in the instant case had not been under guardianship and had sold the property, such sale would have operated as a revocation of the devise, since at his death the identical property was not owned by the testator.

We do not find that there was a revocation under the statute. There is no statutory provision covering this situation.

Was there an ademption of the devise? The terms, ''revocation'' and ''ademption,'' are sometimes used interchangeably, but there is a distinction. 4 Page on Wills (Lifetime Ed.), 359, Section 1514.

In 41 Ohio Jurisprudence, 954, Section 836, it is stated:

''Ademption is the extinction or withholding of a legacy in consequence of some act of the testator.

''There are two classes of ademption: (1) Ademption by the loss or destruction of the subject-matter of the legacy or devise; and (2) ademption by satisfaction of the bequest. From the very nature of the first class, it can apply only to specific legacies or devises, while the second applies only to general legacies. * * *

''Ademption by satisfaction is sometimes spoken of as satisfaction of legacies. Whether there is an ademption rests wholly upon the intention of the testator.''

Also, Section 837, *ibid.*, states:

''Ademption is sometimes spoken of by the courts as if it were a form of revocation. * * *

''* * *

"But there is a distinction between the two terms. Ademption by satisfaction resembles revocation in that the testator intends such satisfaction to terminate the interest of the legatee under the will. Revocation, however, is made only in accordance with statute, while ademption is not."

In Section 838, *ibid.*, the general rule is stated:

"It may be stated as a general rule that the disposal, loss, distribution, or extinction of the subject matter of a specific legacy, adeems the legacy."

There is a footnote to the last quotation, as follows:

"As to ademption of specific devise or bequest by guardian or conservator of incompetent testator, see annotation in 30 A. L. R., 676."

An ademption is largely a matter of intention. *Ellard, Exr.*, v. *Ferris, Exr.*, 91 Ohio St., 339, 348, 110 N. E., 476, L. R. A. 1916C, 613.

What effect does the guardianship have on the determination of this question? The law applicable to an act of a testator who is competent to act is in some respects helpful but not controlling in a situation where the testator was incompetent and the act was done by the guardian of the testator. In the instant case the guardian was appointed on the ground of physical disability or infirmity of the ward with the consent of the ward as provided in Section 10507-2, General Code (Section 2111.02, Revised Code).

The term, "incompetent," is used with respect to the ward, but it is clear that, in this case, it does not connote mental incompetency. In other words, the presumption obtains that the ward was mentally competent to the date of his death. A guardian of a physical incompetent has the same powers and duties as a guardian of a mental incompetent. The sale of the real estate by the guardian was made in accordance with the statutory provisions and under the orders of the Probate Court.

The ward was made a party to the suit as the statute requires and he answered by guardian ad litem. The power of the guardian to convert real property into money is limited by statute. Section 10510-6, General Code (Section 2127.05, Revised Code). In the case at bar the greater portion of the proceeds derived from the sale remained unused at the time of the death of the ward. The power of the guardian terminated upon the death of the ward. The guardian was required to and did turn the money over to the executors. Should this money be regarded as real property or personalty? In 25 American Jurisprudence, 89, Section 144, the general rule with respect to infants and lunatics is stated that the proceeds of the sale remain realty. See, also, 19 American Jurisprudence, 19, Section 23. In 18 Corpus Juris Secundum, 70, Section 34, it is stated as the general rule that the proceeds of the sale of a lunatic's real estate are real estate. In 18 Corpus Juris Secundum, 74, Section 40, the general rule is stated:

"Ordinarily conversion of realty into personalty or personalty into realty results in intestate distribution of the property in its converted form, although in the case of infants or insane persons the property usually passes in its original, and not in its converted form."

In 30 A. L. R., 673, is reported the case of *In re Estate of Cooper*, 95 N. J. Eq., 210, 123 A., 45, which held:

"A committee of a lunatic is a mere conservator of his ward's estate, and his possession of that estate vests him with no power, either intentionally or unintentionally, to change his ward's duly expressed purposes respecting the distribution of his estate after his death."

At the end of the opinion as reported in 30 A. L. R. on page 676, there appears an extended annotation on the subject, "Ademption of specific devise or bequest by guardian or conservator of incompetent tes-

tator." The author calls attention to the conflict of authority due to the fact some courts apply the "intention theory" and other courts the "identity theory." Numerous cases are cited supporting both theories. It must be observed that the more recent cases apply the "intention theory." In 90 A. L. R., 891, is reported the case of *McCoy* v. *Ferguson,* 249 Ky., 334, 60 S. W. (2d), 931, with the following A. L. R. headnote:

"For the purposes of descent and distribution, such part of the proceeds of the condemnation of the lands of an infant as at the time of the infant's death before attaining majority have not been expended by the guardian for his benefit are regarded as real estate."

At the end of the opinion, as reported in 90 A. L. R. at page 897, there appears an annotation on the subject as it relates to infants.

Counsel for appellee cites the case of *Lewis* v. *Hill, Exr.,* 387 Ill., 542, 56 N. E. (2d), 619, claiming that the facts in that case and in the instant case are strikingly parallel. But in that case a conservator was appointed for an insane person. The court applied the general rule, holding that proceeds derived from the sale of the ward's real estate passed under the devise of the real estate.

The state of New York has enacted a statute (Section 1399 of the Civil Practice Act) which provides that in sales of property of incompetents the proceeds are deemed property of the same nature as the estate sold until the incompetency is removed. See *In re Hubbard's Estate,* 196 Misc., 224, 92 N. Y. Supp. (2d), 73. Prior to the enactment of that section, New York courts took the opposite view. In *In re Ireland* (1931), 257 N. Y., 155, 177 N. E., 405, where the testator was of unsound mind, the court held:

"1. A change in the nature of property works an ademption of a specific bequest thereof.

"2. In the absence of statutory authority, there is no power in the courts to change a specific into a general legacy or to turn over the balance of the proceeds derived from the sale of the specific property to the legatee in place of the particular things intended to be given."

The court, in the *Ireland case*, applied what may be considered the minority rule.

Numerous cases from other jurisdictions are referred to in American Jurisprudence, American Law Reports, and Corpus Juris Secundum; and many of these cases are cited and discussed in the briefs of counsel. It will serve no useful purpose to cite or discuss them here. It is sufficient to state that the majority rule is as expressed in the *Cooper, McCoy,* and *Lewis cases*.

It must be observed, however, that thus far the discussion and the general rule controlling relate solely to a situation where a sale is made by a guardian of a mentally incompetent ward. In the instant case, the ward was physically incompetent, not mentally incompetent. Counsel for appellants very ably argue that this fact clearly distinguishes the case at bar from the other· cases cited and that this factual difference requires the application of a different principle of law. Counsel for appellants point out that the ward and testator in the case at bar was at all times competent to make a will and, therefore, competent to change his will with the change of circumstance, if he desired to do so. It is pointed out that the rationale of the decisions cited is that the testator, being incompetent, could not execute a new will, and that the act of the guardian should not operate as a change in testamentary disposition. This process of reasoning is evident in most of the cases. We recognize the persuasiveness of the argument of counsel for the appellants and are

inclined to follow it, since there are no precedents to the contrary.

The logic of the cited cases involving testators who were mentally incompetent, and therefore lacked testamentary capacity, loses its force and has no application, as we see it, in a situation where the testator is physically disabled but whose testamentary capacity remains unimpaired. While it is true that the change of circumstances, the conversion of real property into money, was the act of the guardian, nevertheless, no act of the guardian, the court, or the law of the state deprived the testator of the full and complete exercise of his faculties with respect to the execution of a will. The appointment of the guardian for a physically disabled person, in the first instance, unlike the appointment of a guardian of a mentally incompetent person, is done with the full knowledge and the consent of the ward. In such cases, as in this case, the testator was an active participant in the guardianship proceedings. In the instant case, the findings of fact show that in selling the real estate the ward "was consulted and did agree to the sale of the property." Again, the testator was an active participant in the transaction. True, the statute did not require the ward's consent, but the fact that the ward was consulted and gave consent shows full and complete knowledge on his part, and is of significance in determining the legal effect of the sale with respect to his intention as disclosed in his will. Had he not been under guardianship there would be an ademption. The fact of guardianship was no handicap to him in doing what he willed to do with respect to the disposition of his property by will. 41 Ohio Jurisprudence, 312, Section 78.

Under the facts in this case, if the "identity theory" is applied, there is an ademption. Likewise, as we see it, if the "intention theory" is applied, there is an ademption. In the cases where a guardian is ap-

pointed for a person of unsound mind the "intention theory" is applied to prevent an ademption by concluding that the intention of the testator expressed in his will should be preserved, and a sale of the property by the guardian should not operate to change the will or the effect of the disposition as it existed at the time of its execution. In the case at bar, the "intention theory" would be applied differently. In the instant case, the right of the testator was not cut off at any time; the testator could express his intention up until his death in like manner as a normal person. The testator possessed a continuing right to express his intention, while in the cited cases this right did not exist. He was presumed to know the full legal effect of the sale of the real property which had been specifically devised to his wife. He made no effort to change his will, although he had power to do so.

In the cited cases involving the guardianship of a mentally incompetent person, it appears that the controlling factor is the act of the guardian in converting the property where the testator is powerless to act. In a case as the one at bar, where the testator is in full possession of his faculties and has full testamentary capacity, the controlling factor is the act or the failure to act on the part of the testator, after having knowledge of the sale and consenting thereto. The testamentary capacity of the ward, or lack of testamentary capacity, if controlling in one situation should be equally controlling in the other, although with an opposite result. As counsel for appellants aptly put it, to hold otherwise would have the effect of permitting the guardian to thwart the purpose of the testator.

We find no analogy between the situation here presented and a sale of real estate by an executor or administrator. We agree that certain courts in cases involving sales by guardians of mentally incompetent persons have held that such sales are analogous to

sales by executors or administrators, where it is held, usually under a statute, that the proceeds remain real estate and pass as such. It should be pointed out that in case of sales by executors or administrators, the testator is dead, and the rights of all parties in interest in his estate are fixed as of the date of his death, and in case of a sale by a guardian of a mentally incompetent, such incompetent is legally dead. The reason for the rule is the same in both instances; not so in the instant case, where the reason for the rule fails, and therefore the rule itself fails. The disposition of the proceeds of sale of real estate by an executor, administrator or guardian, in Ohio, is controlled by Section 2127.38, Revised Code, which in part provides:

"The sale price of real estate sold following an action by an executor, administrator, or guardian shall be applied and distributed as follows:

"* * *

" (C) In the case of an executor or administrator, the remaining proceeds of sale shall be applied as follows:

"* * *

"Whether such executor or administrator was appointed in this state or elsewhere, the surplus of the proceeds of sale must be considered as real estate and be disposed of accordingly.

" (D). In the case of a guardian, the remaining proceeds of sale shall be applied in the manner and upon the terms approved by the court where he was appointed."

Section 10510-46, General Code, which was in effect at the time the sale was made, and at the death of the testator, contained a similar provision. The Probate Court complied with the provisions of that section in ordering the guardian to turn the proceeds of the sale over to the executors. Counsel for appellees claim that the rule applicable to the proceeds of sale by an executor or administrator should apply to the pro-

ceeds of sale by a guardian. The statute itself makes a distinction, and, in our opinion, this is significant. Apparently it is the expressed policy of the Legislature that the same rule should not apply. If the Legislature intended the same rule to apply it could easily have included sales by guardians in the provision controlling sales by executors or administrators. The fact that the Legislature did not indicates a declared intention not to do so. If the maxim, *expressio unius est exclusio alterius,* were applied to the provision of the statute applicable to sales by executors and administrators, we would be required to conclude that it was the intention of the Legislature that the proceeds derived from the sale of real estate by a guardian should not be considered real estate. The statutory provision with respect to guardians supports this conclusion, as it impliedly recognizes a revocation or ademption of the devise by the application of the "identity theory." This statutory distinction supports the contention of the appellants, rather than the appellee. To hold otherwise would have the effect of writing into Section 10510-46, General Code (Section 2127.38, Revised Code), by judicial decree a provision applicable to sales by guardians which the Legislature expressly provided should be applicable only to sales by executors and administrators.

We find that there was an ademption of the devise in item II. The $7,271.80 passes under item IV. We conclude by stating that we are not free from doubt as to the proper judgment in this matter, and trust that the final judgment will be rendered by the Supreme Court.

*Judgment reversed.*

MILLER and HORNBECK, JJ., concur.