181 So.2d 682 (1966)
Peter Craig FORBES, Appellant,
v.
John F. BURKET, Jr., and Palmer First National Bank & Trust Company of Sarasota, as Executors under the Last Will and Testament of Laura Hately Forbes, deceased, et al., Appellees.
No. 5506.
District Court of Appeal of Florida. Second District.
January 5, 1966.
Rehearing Denied January 28, 1966.
*683 E.F.P. Brigham and Peter C. Forbes, of Brigham, Smith & Brigham, Miami, for appellant.
M.A. Braswell, of Braswell & Brown, Venice, Francis C. Dart, of Dart, Bell & Dickinson, David B. Bowman, of Burket, Smith & Bowman, Sarasota, and T. Minton Baughman, Ft. Lauderdale, for appellees.
ALLEN, Chief Judge.
This is an appeal by the plaintiff, Peter Craig Forbes, of an order dismissing with prejudice his complaint seeking a declaration of his rights under the Will of his grandmother, Laura Hately Forbes.
The condensation of the facts alleged in the plaintiff's complaint are as follows: The deceased, Mrs. Forbes, executed a Will on February 10, 1953, devising her home, which was located adjacent to the defendant-hospital to the plaintiff. The defendants, Gordon and Sumner Forbes, were named as residuary legatees. On June 9, 1958, the deceased executed a codicil to her 1953 Will, and in said codicil reaffirmed her specific devise of the home to the plaintiff. In November of 1958, the deceased, who was then 81 years old, was adjudicated an incompetent, and her brother, W. Gordon Hately, was appointed as the guardian of her person and property. In April of 1963, W. Gordon Hately having died, the defendant-Palmer First National Bank & Trust Company was named guardian. In June of 1959, W. Gordon Hately, as guardian, obtained an order from the County Judge authorizing the sale of her home to the defendant-hospital for the sum of $12,000. The hospital purchased the property for expansion purposes. In his petition for Order Authorizing Sale, the guardian set forth that:
"* * * the incompetent is failing quite rapidly both mentally and physically, and Petitioner [guardian] deems it in the best interest of said incompetent to place her in a nursing home * * *"
and that:
"* * * in view of these conditions, Petitioner deems it in the best interests of the guardianship estate to sell the above described real estate [ward's home] * * *."
Simultaneously with the sale of the house to the defendant-hospital, her guardian made a cash gift of $2,500 to said hospital. An additional cash gift of $1,100 was given to the defendant-hospital at a later date. Authorization was obtained from the County Judge to make such gifts by the guardian. In the guardian's petition he stated that:
"* * * the guardianship estate has a large annual income of approximately SEVENTY THOUSAND ($70,000.00) DOLLARS per year before taxes and administrative expenses, and that it is the desire of the guardianship estate to give a tax-free charitable gift to the South Sarasota County Memorial Hospital Association, Inc., a non-profit corporation organized under the laws of Florida. Petitioner further shows to the Court that prior *684 to her incompetency, Petitioner's ward was in the habit of making many and sizeable charitable gifts and Petitioner is of the opinion that if the ward were competent at this time, she would approve of the making of such gift. * *"
Mrs. Forbes died without having ever regained her competency. When her Will was admitted to probate, the plaintiff then learned that he had been devised the home, and that the same had been sold to the defendant-hospital.
The plaintiff then filed the instant suit seeking a declaratory decree as to his rights under the Will of Mrs. Forbes. The plaintiff alleged that "the sale of said home property was a positive interference with the dispositive intention of the testatrix to devise the home property to the plaintiff," which was expressed in her Will and codicil. The plaintiff claimed that the County Judge was "without jurisdiction to approve the sale of plaintiff's devise to the defendant hospital, and to authorize the gifts because there was no statutory ground alleged or found to exist to justify the sale or the gifts." Moreover, the plaintiff claimed that if the sale of the home was valid, it did not adeem his devise.
The defendants filed motions to dismiss for failure to state a cause of action, and failure to join indispensable parties, to-wit: The estate of the deceased guardian and the surety on his bond. The motions to dismiss were granted with prejudice, the plaintiff having advised the court that he was unable to amend. The trial judge stated at the hearings on the motions that, "I can't question the validity of the Order of the County Judge in this connection," and that the plaintiff's "action can not be substituted for that which was available to you in the way of an appeal." He further held that, "Apparently the law of this State bearing upon this subject is [the] Common Law as it existed prior to July 4, 1776, which was to the effect that an ademption would occur under these circumstances."
The appellant-plaintiff contends that the sale of the property was void because the jurisdiction of the County Judge does not appear on the face of the record, and that the reason for allowing the sale  for the best interests of the guardianship estate  was not a valid reason under § 745.05, F.S.A. Alternatively, the plaintiff contends that, assuming the sale was valid, the devise was not adeemed by said sale and that he is entitled to the unused proceeds received from the sale. The plaintiff further maintains that the guardian had no authority to make the cash gifts to the hospital, and that the gifts should be returned to the estate of the deceased-ward. Lastly, the plaintiff asserts his remedy was not by appeal of the order allowing the sale, simply because he was not a party to the action, and that under the circumstances his complaint for declaratory decree was a proper remedy.
Several appellees filed separate briefs in response to the plaintiff's-appellant's brief. The appellees assert that the plaintiff may not collaterally attack the orders of the County Judge authorizing the sale of the property in question, and that the plaintiff may not maintain the present action because the Orders of the County Judge do not come within the purview of § 87.02, Fla. Stats., authorizing suits for declaratory relief. As to the cash gifts to the hospital, the appellee-hospital contends the plaintiff's remedy, if any, is against the estate of the deceased guardian and his surety on the guardian's bond. The appellee-hospital did not argue the point as to whether or not the devise to the appellant adeemed. The appellees, Gordon and Summer Forbes, legatees under the deceased's Will, contend that the devise adeemed when the property was sold to the hospital. They argue that "the `identity' rule [as opposed to the `intention' rule] is the majority rule in America and, since prior to 1776, also the majority rule in the English common law; this is accordingly the law in Florida." The appellee, Palmer First National Bank, trustee and guardian of the deceased's estate, *685 contends that a suit for a declaratory decree could be maintained to determine the plaintiff's right but could not be maintained to collaterally attack the prior orders of the County Judge, and that on this ground the order dismissing the complaint was proper. The appellee-bank states that the Circuit Judge at no time ruled on the question of whether a declaratory decree was the proper form of action to determine the question of ademption. The appellee-bank has taken a neutral position on the ademption problem.
We are of the view that the County Judge's approval of the sale of the home of the deceased testatrix and the two gifts to the hospital is valid. The County Judge had jurisdiction and if his decision was erroneous in the giving of the three orders set forth in the plaintiff's action for declaratory decree, the declaratory act cannot be used to collaterally attack these orders, in effect as a substitute for an appeal.
However, the lower court erred in dismissing the complaint on the ground that it did not state a cause of action as the appellant, Peter Craig Forbes, stated in his complaint:
"* * * that, on the contrary, the Defendant Hospital claimed that the Court did have jurisdiction to approve the sale of said home property of the testatrix to it, and that said gifts of $2,500.00 and $1,100.00 respectively are valid gifts; further, Plaintiff claims that if the Court should decree that the sale of said home property of the testatrix devised to him was a valid sale to said Defendant Hospital, that said sale did not operate to adeem said devise to him, but that, on the contrary, he is entitled to have the proceeds of said sale, amounting to the sum of $12,000.00; that in view of the contrary claims of the respective parties herein alleged, the Plaintiff is in doubt whether said sale and said gifts to the Defendant Hospital are valid, and is in doubt whether, if said sale to said Defendant Hospital is valid, the same did adeem his said devise of the home property, and whether he is entitled to receive the proceeds of said sale of the home property, amounting to the sum of $12,000.00; that Plaintiff had no notice of said sale or said gifts, and did not consent to the same, and was unaware, until the Will was probated, that he had been devised the home property by the testatrix in her Will and Codicil.
"WHEREFORE, the premises considered, Plaintiff respectfully prays that the Court will decree:
"* * *
"3. In the alternative, that the sale of said home property, devised to the Plaintiff by testatrix, to said Defendant Hospital, did not adeem said devise to the Plaintiff, but only converted or reduced the same to the proceeds of sale paid by the Defendant Hospital to said guardian, in the sum of $12,000.00 and that Plaintiff is entitled to have the same paid to him forthwith, together with any interest which the same may have earned by being deposited with any building and loan association, or any other savings account paying interest;
"4. That none of the Defendants herein are entitled to the proceeds realized from the sale of said home property, which was devised to the Plaintiff by the testatrix, mentioned in said Paragraph Seventh of said Will, to the Defendant Hospital;
"5. That if the Court decree the sale of the home property, devised to the Plaintiff by the testatrix's Will, to be a valid sale, that the Court will order the Defendant guardian and/or defendant Executors to pay said proceeds of the same to the Plaintiff forthwith, depending in which capacity the Defendants hold said money, viz. whether *686 in the capacity as Executors or in the capacity as guardian."
We hold the lower court erred in dismissing the bill of complaint with prejudice.
Very excellent briefs were prepared by all parties involved in this case. One side argued that the Common Law of England, as it existed prior to July 4, 1776, was that the question of ademption under wills should be determined by the so-called identity rule, while the other parties argue that the intent of the testator should determine the question of ademption. Both sides adduced authorities to support their view as to what was the common law rule as of July 4, 1776.
We have read a large number of authorities cited by the parties in their briefs, as well as additional cases produced by our own research and find that there seems to be a conflict as to the common law rule, but we do not believe this to be important in this particular case. We find the latest expression of the testator's intent theory was the case of Eisenschenk v. Fowler, Fla. 1955, 82 So.2d 876, 878, where the writer of this opinion was affirmed by the Supreme Court of Florida in an opinion by Mr. Justice Thomas. In this case it was said:
"The prime concern in determining whether or not an ademption resulted in the instant case is the familiar rule governing construction of wills, namely that the court should determine what the testator intended by what he did. As the author of the opinion in Donath v. Shaw, 132 N.J. Eq. 545, 29 A.2d 555, 559, wrote, `the question of ademption is a question of intention.' This decision was cited in In re Dublin's Estate, supra [375 Pa. 599, 101 A.2d 731]. See also Trotter v. Van Pelt, 144 Fla. 517, 198 So. 215, 131 A.L.R. 1018; Hurt v. Davidson, 130 Fla. 822, 178 So. 556. We think the rule may be applied here although the courts are not in unanimous agreement that ademption is a matter of testatorial intention, and clearly it could not apply to all cases because ademption may result from destruction or extinction of the subject matter in circumstances wholly unconnected with intention of the testator."
In the case now before this court we have a situation where the testatrix, after providing in her will for specific property to go to the appellant on her death, was declared incompetent. A guardian was appointed, who petitioned the court and was granted authority to sell the property that was to be left to the appellant. Thereafter, the testatrix died. The record shows that the estate of the testatrix produced an income of approximately $75,000 per year and that she was probably mentally incompetent to make a new will. The question arises whether, under this particular set of facts, the proceeds of the sale of the property should be paid over to the appellant on the theory that it was the intention of the testatrix for him to have the property and the property was sold under an order of the court. Therefore, in equity, the proceeds were not needed and not used for the support of the ward and should be given to the appellant.
This question has not heretofore been determined in Florida.
In 6 Page on Wills, Bowe-Parker Revision, § 54.18, page 271, under the subject, "Sale, collection, etc., by guardian or conservator of incompetent testator," it is stated:
"If testator was competent when he made the will, but he has since become incompetent, and a guardian has been appointed with power to dispose of testator's property, a question of ademption is frequently presented where the guardian has sold property or collected debts and the like which testator owned while competent and which he had devised or bequeathed specifically. If the existence and identity *687 is the sole test, and the intention of testator is absolutely immaterial, such sale, collection, and the like should operate as an ademption wherever a similar sale or collection would operate as an ademption if made by testator himself. If the intention of the testator is of any importance whatever, this is a case in which the sale, collection, and the like, takes place without any operative intention on his part, since in many cases he has no actual intention, and, if he has any actual intention, he is frequently incompetent to make a will, and therefore incompetent to form any operative intention to modify the disposition of property which he has made therein.
"* * *
"In the United States a sale, collection, and the like by the guardian of an insane testator works an ademption as far as the proceeds of such sale and the like have been expended for the benefit of testator. If the proceeds of such sale, collection, etc., have not been expended for the benefit of the testator and can be traced, it is generally held in the United States that the sale, collection, and the like by the guardian does not adeem a specific devise or legacy; and that the devisee or legatee takes the proceeds as far as they can be traced. The act of a guardian in withdrawing the interest on a fund from a bank, or in collecting testator's share of the estate of another, or in selling realty for the purpose of reinvestment, does not adeem a specific bequest or devise of the property which the guardian has thus sold or collected.
"A like result has been held to follow where testator remained competent but voluntarily placed his property in the hands of a conservator. A specific bequest of a bank deposit was not adeemed by the act of the conservator in investing it in bonds.
"* * *
"The results of the rule that sale, collection, and the like by guardian of an incompetent person operates as an ademption have been very unsatisfactory. A guardian who is hostile to one of the beneficiaries may adeem the gift to him by a sale of the property, or by collection of a debt. If he is friendly to one to whom a general gift is made or to whom a general residuary gift is given, he may increase the amount of such gift by converting the property into the form which is given to such beneficiary. For these reasons, the legislature has modified the rule in some jurisdictions in which such sale was formerly held to operate as an ademption; and it is provided by statute that, for purposes of this sort, the proceeds are to be treated as of the same nature as the property which was sold. Such a statute does not apply to that part of the proceeds which is expended for the support of the testator; nor, it has been held, to the investment of money on hand in stocks and the like."
In a case preceding the Eisenschenk case, supra, Hurt v. Davidson, 1937, 130 Fla. 822, 178 So. 556, the Supreme Court of Florida held that where a testatrix, after making a Will devising "my house and lot" in a certain municipality, conveyed the property she owned when the Will was executed, and purchased another house and more lots, which were in her possession when she died without changing her Will, that the devise did not operate to convey the second house and lots. The Supreme Court said:
"According to the allegations of the bill of complaint, there was no ambiguity as to the property which was intended to be conveyed by item 4 of the will, and when that property was *688 sold and conveyed by the testatrix subsequent to the execution of the will, there was nothing left in the property of the testatrix to which that item of the will could apply. See 68 C.J. 483; Dunlap v. Hart, 274 Mo. 600, 204 S.W. 525, 3 A.L.R. 1493; Hays et al. v. Jones, et al., supra [122 Fla. 67, 164 So. 841].
"In Redfearn's `Wills and Administration of Estates in Florida 209, par. 142, that eminent writer says:
"`The ademption of a legacy or devise exists where the testator, during his life, after making his will, delivers or conveys the property bequeathed or devised to the legatee or devisee, either expressly or by implication, in lieu of the legacy or devise given. Ademption also exists where the testator conveys to another person the specific legacy or devise and does not afterwards become possessed of the same, or where he otherwise places it out of the power of the executor to deliver or to convey the legacy or devise to the beneficiary. Ademption may refer either to devises of land or to bequests of personalty. Ademption is different from revocation in that, if the testator conveys the property but again acquires it before his death, the legacy or devise is not adeemed; if a devise is revoked by a testator, a new will or codicil will be necessary to reinstate it.
"`Strictly speaking, ademption refers only to specific legacies or devises. If a specific thing is given in a will and then later conveyed by the testator, an ademption takes place.'"
In 9 U.Fla.L.Rev. 237, 238, the author discussed the Eisenschenk case, supra, stating:
"When the property is no longer in existence there is clearly an ademption; but when there has been a change in the identity of the property, or the testator has exchanged it for similar property, courts differ as to whether the specific devise or bequest has been adeemed. A majority of the courts follow the test set forth by Lord Thurlow, which, disregarding the testator's intent, looks only to see if the thing given remains in the estate. Thus, these courts state that a mere change in form of the subject matter will not work an ademption but that a change in substance will adeem the gift. Intent of the testator is considered irrelevant, since the issue is not whether the testator sought to modify the will but whether there is an object upon which the will can operate. A minority of courts hold that whether there has been an ademption depends upon the intent of the testator; the basis for this view is the general rule that intent governs testamentary interpretation.
"The Florida Supreme Court in past decisions had aligned itself with the majority view. In Hurt v. Davidson the testatrix, subsequent to executing a will devising her house and lot, conveyed the property and purchased another house in the same town * * * The Court held, however, that the property could not be the subject of the specific devise, which was therefore adeemed:
"* * *
"It was unnecessary to resort to the testator's intent in the instant case. Cases following the majority view, which the Florida Supreme Court heretofore had adopted, have held that when an owner who has executed a will devising certain property thereafter sells the property, taking back a mortgage as security, there is an ademption.
"Since the minority position invites confusion and uncertainty in proof of intent, it is suggested that the court should reaffirm its adherence to the *689 majority view and thus limit the importance of the intent language in the Eisenschenck [Eisenschenk] case."
Preceding Eisenschenk, supra, the Supreme Court again touched on this question in In re Vail's Estate, Fla. 1953, 67 So.2d 665. It held that a split-up of shares of stock of a corporation is a mere change in form and not in substance, and that additional shares so acquired passed under a specific bequest of original shares. The Supreme Court, in its opinion, page 667, said:
"It is clear that the bequests in paragraph numbered 1 must be classified as specific and not general. In re McDougald's Estate, 149 Fla. 468, 6 So.2d 274. To ascertain the intent of the testatrix, we are aided by applicable rules of law. In Hurt v. Davidson, 130 Fla. 822, 178 So. 556, 557, we said that `while a will becomes effective at the death of a testator, the description of property specifically bequeathed must be applied to property as of the date of the will * * *.' At the time Mrs. Vail executed her will, the description in question applied to property represented by 500 shares of stock in the St. Paul Fire and Marine Insurance Company, which was, as the words `my five hundred shares' connote, her entire interest in that corporation. But since the 500 shares had become 2,000 at her death, the point in controversy relates to the amount of this stock which should not pass to the specific legatees."
Further, on page 669, it said:
"This is the theory we adopt, and we hold that the stock dividend in this case, representing a mere dilution in the number of shares originally bequeathed, without change in ownership of the corporate assets, passed to the specific legatees. Cf. Butler v. Dobbins, 142 Me. 383, 53 A.2d 270, 172 A.L.R. 361. The gift could have been adeemed, in whole or in part by action of the testatrix in disposing of her shares, but it was not. Cf. Hurt v. Davidson, supra, 130 Fla. 822, 178 So. 556. It could have been adeemed partially by action of the corporation in the declaration of a cash dividend, and it was. But the remainder is intact, and must be delivered to the specific legatees."
In the case of Lewis v. Hill, 1944, 387 Ill. 542, 56 N.E.2d 619, the Supreme Court held that the county court, in acting upon the petition of a conservator for the sale of his ward's lands, exercises general jurisdiction and the question of necessity or advisability of selling is determined by the order of sale and cannot be reviewed collaterally. It was held that in determining whether realty owned by a person of unsound mind should be sold, the court only considers the situation of the ward and does nothing unnecessarily to alter the ward's property, but takes care that if he recovers he shall find his estate as nearly as possible in the same condition as he left it.
The Court further held that where the conversion of real estate into personalty by guardian's sale under court order was for the purpose of the ward's support, the fund produced by the sale could not be regarded as personalty for the benefit of the ward's legatees. Also, where the land had been specifically devised by the testatrix, before she became insane, and was sold by the conservator for her support under court order, there was no ademption of the specific devise, and proceeds of the sale not used for her support took the place of the real estate devised and passed to the devisee. The Court, in its opinion, 56 N.E.2d page 622, said:
"* * * The rule in respect to the disposition by a guardian of the proceeds of a sale of the ward's real estate is that they must be used by the guardian for the particular object contemplated by the court in granting *690 the license to sell. If the permission to sell was granted for the purpose of maintenance and support, the moneys obtained must be so appropriated. If for the payment of debts, those debts must be paid. Kingbury v. Powers, 131 Ill. 182, 22 N.E. 479. The same rule should be applied in respect to moneys realized by a conservator from a sale of his ward's real estate. The county court in this instance directed the sale by the conservator for the purpose of Mrs. Collins' support. The conversion of the real estate into personalty was for that particular purpose and for her benefit alone. The fund produced by the sale cannot, therefore, be regarded as personalty for the benefit of her residuary legatees. All of the real estate of Sarah E. Collins in the possession of her conservator constituted a trust fund to be used, if necessary, for her support and the payment of her debts; and if not so used, then upon her death to go to the persons to whom she had devised the same when able to exercise a testamentary disposition. Conceding that the conservator could properly have used this money for her support or in the payment of her debts and the costs of administering her estate, still the money being on hand and not having been so used or its use so required, it must be regarded as a substitute for the land from the sale of which it was derived, and any rights which, under the will, would attach to the real estate itself will also exist in the fund. The fact that the conservator, in anticipation of the necessities of his ward, had converted the real estate into cash does not have the effect of transferring this fund, which represents the realty, to the residuary legatees. It is our conclusion that the $900, received by the conservator from the sale of the residence property, upon her death descended as such real estate and should, under the provisions of her will, be paid to the appellee to whom such property was specifically devised."
In 51 A.L.R.2d 770, 774, the annotator, in discussing the question of ademption, states:
"There are statements in some cases to the effect that the guardian or other representative of a mentally incompetent person is wholly without power to work an ademption of a specific testamentary gift of an item in the ward's estate, but such expressions should probably be related to the particular situation in which an ademption was claimed and not be regarded as precluding the recognition of an ademption pro tanto to the extent that proceeds of the item were properly applied to the support or other expenses of the ward. This suggestion relates particularly to the statements found in the Wilmerton Case (F) infra, and the New Jersey and New Hampshire cases referred to in this subsection."
On page 775, the annotator discusses a New Jersey case, Re Cooper's Estate, (1923) 95 N.J. Eq. 210, 123 A. 45, 30 A.L.R. 673, referred to by the Florida Supreme Court in the Eisenschenk case, supra. We quote:
"The New Jersey court has stated: `A committee in lunacy is a mere conservator of his ward's estate, and his possession of that estate vests him with no power, either intentionally or unintentionally, to change his ward's duly expressed purposes respecting the disposition of her estate after her death. To hold otherwise would be to say that he may arbitrarily revoke her will, so far as it provides specific legacies, and may transfer the property which is the subject thereof from the persons designated by the testatrix to the residuary legatee, or  if there be none  to the next of kin. We consider that the English decisions, and those of some of our sister states, cited in the opinion of the learned vice-ordinary, which affirm the existence *691 of such a power in the committee of a lunatic, are unsound in principle and should not be followed.' Re Cooper (1923) 95 N.J. Eq. 210, 123 A. 45, 30 ALR 673, infra, § 3."
In Wilmerton v. Wilmerton, (CA 7th, 1910) 176 F. 896, cert. den. 217 U.S. 606, 30 S.Ct. 696, 54 L.Ed. 900, it was claimed that a specific devise had been destroyed by the withdrawal of the money from the trust fund. The Court said:
"But how can that be said to be the case where the diminution or extinguishment of the thing, upon which the specific bequest acts, is not the subsequent voluntary or conscious act of the testator himself. The conservation of an estate under the lunacy laws, both here and in England, is purely an administrative function. Is it contemplated that an administrator may, at his will, change the testator's will? The testator, lunacy coming on, is, so far at least as a disposing mind is concerned, civilly dead. Does the disposing mind, along with the ward's effects, go over to the conservator? Is the conservator anything more than a mere custodian and administrator of the ward's estate, with no power, either directly or by indirection, to change the ward's duly expressed purposes respecting the disposition of that estate until the ward recovers his reason, or the administration after death begins?"
And at page 900:
"* * * The question, in our judgment, is not whether, as a mere matter of accident, or of purpose outside of the testator's purpose, the thing set apart as the corpus of a special bequest has been changed in specie. The real question is whether, all things considered, the testator's testamentary disposition did, or did not, remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. In that way, and in that way only, we think, can the right of the man to dispose of his property according to his own wishes, exempt from the interference, caprice or interest of others, be fully carried out. In that way only can his intention, as embodied in his will, be truly administered."
For similar views as to the ademption of a devise under a testator's will by acts of guardians, etc., see Bishop v. Fullmer, 1960, 112 Ohio App. 140, 175 N.E.2d 209; Roderick v. Fisher, 1954, 97 Ohio App. 95, 122 N.E.2d 475, 51 A.L.R.2d 762; Lewis v. Hill, 1944, 387 Ill. 542, 56 N.E.2d 619; and Duncan v. Bigelow, 1950, 96 N.H. 216, 72 A.2d 497.
In the case of In re Bierstedt's Estate, 1963, 254 Iowa 772, 776, 119 N.W.2d 234, 236, the Iowa Supreme Court said:
"Where the testator is competent and disposes of the subject of the gift, the gift is adeemed; where the testator is incompetent and the subject of the gift is sold by a guardian with court approval, the gift is only adeemed to the extent the proceeds are used for care and maintenance of the ward. The only question of intention involved is the opportunity of the testator to change the will. This opportunity is denied the incompetent testator. No question of his intentions other than expressed in the will is involved. Where, as here, the testator is incompetent and under guardianship, a sale by the guardian does not work an ademption so far as the proceeds are traceable. This is the majority view in this country. (Citations omitted.)"
"* * *
"The adoption by us of the majority view on the question presented does not represent any change of position as to the doctrine of ademption where the subject of the specific devise or *692 bequest is sold or otherwise disposed of by a competent testator."
In Walsh v. Gillespie, 1959, 338 Mass. 278, 154 N.E.2d 906, 908, 909, the Massachusetts Supreme Court said:
"But there is one situation where some courts have refused to apply the `identity' doctrine. Thus where a testator, as in the present case, has become incompetent and his affairs are being conducted by a conservator or guardian the majority view in this country is that the sale of the property by the conservator or guardian does not work an ademption of a specific legacy, at least so far as the proceeds are traceable. * * *
"* * *
"We are of opinion that an application of the `identity' theory to a case like the present would be unjust. It would result in a disruption of the dispositive scheme of the testatrix because of wholly fortuitous circumstances beyond her control. Of course this is also the case when a testator's property is destroyed by an act of God or by other causes. Yet there is this difference: in the latter situation the testator, still being competent, has an opportunity to correct the result by changing his will. He has no such opportunity while he remains incompetent. But there are other reasons. The estate here was comparatively small. When the conservator took charge there was only a small amount of cash available. The only asset which could be readily converted into cash for the ward's support was the du Pont stock. But this was the largest asset of the estate and it had been specifically bequeathed to the petitioner and another; they were the principal objects of the testatrix' bounty. If there is an ademption then nearly one half of the estate's largest asset will fall into the residue to be divided among five residuary legatees who, so far as appears, were not intended to receive more favorable treatment under the will than the specific legatees. * * *"
We reverse for further proceedings consistent with this opinion.
LILES, J., and WILLIS, BEN C., Associate Judge, concur.