# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00225-SCT

*MISSISSIPPI BAPTIST FOUNDATION, INC.*

*v.*

*THE ESTATE OF BERTHA GANDY MATTHEWS, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/12/2000 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LEONARD D. VAN SLYKE, JR. |
| ATTORNEYS FOR APPELLEE: | CAROLYN BUTTLES MILLS |
| | JERRY L. MILLS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 08/02/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/23/2001 |

**BEFORE BANKS, P.J., MILLS AND COBB, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. This is an appeal by the Mississippi Baptist Foundation, Inc., from an adverse decree entered in the Chancery Court of Madison County, in favor of the estate of Bertha Gandy Matthews.

## FACTS

¶2. Bertha Gandy Matthews and her husband Willis T. Matthews established the Willis T. and Bertha G. Matthews Trust Fund on December 30, 1986. The trust was established with five State of Texas Veterans Land Bonds, each with a face value of $5000, and with an Industrial Development Bond of the City of Oak Ridge, Tennessee, which had a stated value of $115,000 at its maturity. The trust fund was to be held in perpetuity by the Mississippi Baptist Foundation, Inc. (hereinafter "the Foundation") as trustee with income to be distributed annually: "33% to the Home Mission Board of the Southern Baptist Convention, Atlanta, Georgia; 33% to the Foreign Mission Board of the Southern Baptist Convention, Richmond, Virginia; and 33% to the Board of Trustees of the Mississippi Baptist Children's Village, Jackson, Mississippi." The bonds establishing this trust fund are not in dispute in this case.

¶3. Willis and Bertha also owned other stocks and bonds. After Willis's death, Bertha executed a will on November 9, 1988, containing the following provisions:

> I hereby will, devise and bequeath all of the corporate stocks, corporate bonds, and all municipal bonds owned by me at my death unto MISSISSIPPI BAPTIST FOUNDATION, a non-profit corporation of Jackson, Mississippi, under the control of the Mississippi Baptist Foundation, as Trustee under a Trust Agreement dated December 30, 1986, between Willis T. Matthews and Bertha G. Matthews, as Trustors, and said Trustee, said trust known and administered as the "WILLIS T.

AND BERTHA G. MATTHEWS TRUST FUND". The stocks and bonds hereby devised to the Trustee shall be added to, held and administered as a part of the trust estate created by and under the terms of the aforesaid Trust Agreement, upon the terms and conditions as set forth in said Trust Agreement, and for the use and purposes therein stated.

The residue was bequeathed to her friend, Rosie C. Roberts, three nieces, and two nephews, including Dr. David John Gandy, who served as Bertha's conservator and later as executor of the estate.

¶4. Bertha sold her residence in Magee and moved to St. Catherine's Village in Madison in 1990 where she contacted Agnes Tribble at Trustmark National Bank in Jackson to set up an investment account. Bertha entered into an investment management agreement with the bank. Tribble testified that as Bertha's bonds or securities were called by their issuers, most of the monies were placed into Trustmark mutual funds.

¶5. In 1992, Tribble visited Bertha at St. Catherine's to discuss her business affairs. At this time, according to Tribble's records, Bertha expressed her concern about the bonds she held going to the Foundation. Bertha advised Tribble that as the bonds came due she wished to "[cash] them in and keep them."

¶6. On June 23, 1994, Gandy was appointed as Bertha's conservator. Gandy executed an investment management agreement with Trustmark identical to that previously executed by Bertha. The funds remained under Trustmark's direct management. Tribble testified, and Baptist does not dispute, that Gandy made no investment decisions.

¶7. During the time that Gandy was conservator, no corporate stocks or bonds were sold. The only municipal bonds that were disposed of either matured or were called by the issuers. At the time of Gandy's appointment, corporate stocks, corporate bonds, and municipal bonds (not including mutual funds) amounted to $108,716.37 or 40.54% of Bertha's estate. At the time of the estate's final accounting, corporate stocks and bonds and municipal bonds amounted to $61,390.05 or 16.05% of the estate.

¶8. Bertha died on October 17, 1998. Thereafter, an estate was opened in the Chancery Court of Madison County. As Gandy, the executor, was preparing to close the estate, he presented Baptist with a final accounting and waiver of notice. Baptist refused to accept the final accounting, claiming entitlement to all of the Trustmark mutual funds.

¶9. A hearing was held on December 23, 1999. The Foundation challenged the exclusion from its bequest of the mutual funds, which had been classified as other than "corporate stocks, corporate bonds and all municipal bonds." The Foundation also alleged a conflict of interest by Gandy.

¶10. The chancellor found as follows:

[M]utual funds held by the Testator at the time of her death does [sic] not constitute corporate stocks or corporate bonds as described in the Will and further that the Executor properly handled his duties as Conservator prior to Testator's death and that the Conservator's duties were to Mrs. Matthew's [sic] and her financial well being prior to her death and that Executor had no improper influence in the management of the Estate prior to and proceeding [sic] her death. Therefore, all funds not specifically identified as corporate stocks or corporate bonds shall be disbursed to the beneficiaries as set forth in the Will.

¶11. Aggrieved by the chancellor's judgment, the Foundation timely perfected this appeal.

<u>**STANDARD OF REVIEW**</u>

¶12. The chancellor in the case sub judice implicitly concluded that the bequest of corporate stocks, corporate bonds, and municipal bonds was a specific bequest. He found that mutual funds are not "encompassed by the definition of stocks, bonds, or municipal bonds." Such a finding amounts to a legal conclusion. This Court has stated "that when reviewing the chancellor's legal findings, particularly involving the interpretation of instruction of a will, this Court will apply a de novo standard of review." *In re Carney*, 758 So. 2d 1017, 1019 (Miss. 2000) (citing *In re Estate of Homburg*, 697 So. 2d 1154, 1157 (Miss. 1997)).

<u>**ANALYSIS**</u>

**I. WHETHER THE LOWER COURT ERRED IN RULING THAT, FOR PURPOSES OF THE WILL, MUTUAL FUNDS COMPOSED OF CORPORATE STOCKS AND CORPORATE BONDS WERE NOT ENCOMPASSED WITHIN THE DEFINITION OF STOCKS AND BONDS.**

¶13. The chancellor found that "mutual funds are not. . . encompassed by the definition of stocks, bonds, or municipal bonds. Though they obviously invest in those things, or an accumulation of those things.[sic]" The Foundation asserts that the interests offered by Trustmark in its mutual funds are securities within the meaning of the Investment Company Act, 15 U.S.C.A. § 80a-1(a)(36). The Foundation also notes that stocks and bonds are securities. The Estate does not dispute either of these facts but takes issue with the next step in the Foundation's logic whereby the Foundation appears to assert that since mutual funds are securities and since stocks and bonds are securities, then mutual funds are stocks and bonds. As the Estate asserts, this argument makes as much sense as: "A dog is an animal, therefore all animals are dogs."

¶14. At the hearing, Dr. Walter P. Neely, a professor of finance at Millsaps College, was tendered as an expert due to his familiarity with the "particular type of investment utilized by Trustmark in this case [mutual funds]." Neely testified as follows regarding the nature of mutual funds and investment companies:

> Dr. Neely: Mutual funds are a trust, and that's why there's a name, Performance Funds Trust. They are set up by the Investment Company Act, and they are governed by regulations effecting [sic] investment companies. So it's an investment company, not a corporation.
>
> Mr. Mills [attorney for the Estate]: And, in fact, the investment companies are trusts, are they not?
>
> Dr. Neely: That's right.
>
> Mr. Mills: And, all mutual funds created under the Act are, in fact, shares of the trust, rather than corporate stock in, say, Trustmark?
>
> Dr. Neely: That's right. They're owned by the investors in the mutual funds. It's like a mutual company. They are not owned by shareholders. They are owned by the owners of the funds.
>
> Mr. Mills: And, even if there were corporate stocks held by the mutual fund, it is my understanding your opinion is that that would not convert to shares of the mutual fund into a corporate stock?
>
> Dr. Neely: That's correct.

¶15. The Foundation argues that the chancellor erred in relying on Neely's expert testimony. The Foundation contends that the testimony amounted to a legal conclusion and, as such, was improper. We find no merit to this argument for two reasons.

¶16. First, the Foundation failed to make a contemporaneous objection on this point. *See* Miss. R. Evid. 103. A contemporaneous objection is required to preserve an error for appellate review. ***Smith v. State***, 530 So. 2d 155, 161-62 (Miss. 1988). This rule has been applied to the specific issue raised here. This Court has stated:

> Such failure likewise waives objections to evidence of declarations or admissions, and to expert or opinion evidence, as that the opinion of an expert is based on an ex parte statement, and to an objection that the answer states a legal conclusion.

***Huff v. State***, 176 Miss. 443, 169 So. 839, 840 (1936).

¶17. Second, Mississippi law indicates that even if Dr. Neely's testimony is deemed a legal conclusion, the testimony was proper. In ***McBeath v. State***, 739 So. 2d 451, 454 (Miss. Ct. App. 1999), the Court of Appeals explained as follows:

> There is no invalidity to an expert witness's testimony even if the answer is in effect also a legal conclusion, if what underlies that conclusion is within the witness's specialized area of expertise. Another evidentiary rule provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." M.R.E. 704. The comment to the rule states that an "opinion is no longer objectionable solely on grounds that it 'invades the province of the jury.'" M.R.E. 704 cmt.

¶18. Neely was tendered as an expert in the field of finance based upon his educational background and experience and his familiarity with the "particular type of investment utilized by Trustmark in this case [mutual funds]." The conclusions he reached regarding mutual funds were within his specialized area of expertise. Also, his opinions were clearly helpful to the trier of fact. The chancellor should have been allowed to rely on Neely's testimony. There is no merit to this assignment of error, as Neely's conclusions clearly reveal that mutual funds are not within the definition of stocks, bonds, and municipal bonds.

### II. WHETHER THE LOWER COURT ERRED IN RULING THAT THE BEQUESTS OF STOCKS AND BONDS COULD BE ADEEMED BY THE ACTIONS OF THE TESTATRIX'S CONSERVATOR WHEN THERE WAS NO EVIDENCE OF ANY CHANGE IN THE TESTAMENTARY INTEREST OF THE TESTATRIX.

¶19. The Foundation asserts that the ademption or disposition of the property which would otherwise fund its specific bequest occurred not as a result of Bertha's intentional acts but by and under the authority of Gandy, her conservator. The Foundation argues that when a testator's "affairs are being conducted by a conservator or guardian the majority view in this country is that the sale of property by the conservator or guardian does not work an ademption of a specific legacy, at least so far as the proceeds are traceable." ***Forbes v. Burket***, 181 So. 2d 682, 692 (Fla. 1966).

¶20. Ademption typically "occurs when a testator in his lifetime disposes of a piece of property he has specifically devised or bequeathed in his Will. The effect is that the gift fails since the testator at his death did

not own the property." Robert A. Weems, *Wills and Administration of Estates in Mississippi* § 9-20, at 305 (2d ed.1995). For example, in **Welch v. Welch**, 113 So. 197 (Miss. 1957), the testator bequeathed his Packard automobile to his wife but, prior to his death, sold the Packard and bought a Lincoln. We held that the bequest was adeemed by the testator's sale of the Packard. *Id.* at 199. In other words, the wife did not take the Lincoln.

¶21. The Foundation argues that the key in cases of ademption is the knowledge and affirmative act of the testator. "The testator **knew**, when he exchanged the Packard automobile for the Lincoln automobile that the latter was not disposed of by his will. It is not unreasonable to presume that if he intended that Appellee, his wife, should have the Lincoln automobile instead of the Packard, he would have changed his will to that effect."*Id.* (emphasis added).

¶22. Assuming that the question of ademption does turn on the knowledge of the testator, the municipal bonds at issue in this case were adeemed. The Foundation has failed to offer a convincing argument that Bertha did not have knowledge of the investment plan at work with Trustmark. To the contrary, the record reveals that Bertha initiated the plan of reinvesting the proceeds from the matured municipal bonds. Further, it is undisputed that many of the municipal bonds were reinvested into mutual funds during Bertha's control of the account prior to the establishment of the conservatorship.

¶23. The Foundation alleges that the decision to invest in Trustmark mutual funds was made by Tribble. This assertion overlooks Tribble's testimony to the contrary. Tribble testified as follows:

> Mr. Mills: And, what was done with the monies from the call of the bonds or securities during Mrs. Bertha's lifetime?

> Ms. Tribble: Most of it went into our mutual funds. When we established our mutual fund in 1991, she was very interested in it. So, most of the money, then, would be put into a mutual fund.

> \* \* \*

> Mr. Mills: Ma'am, did you in making investments for Mrs. Matthews follow the directions given to you by Mrs. Matthews?

> Ms. Tribble: What Mrs. Matthews did was really give us sole authority. And, we had discussed our mutual funds with her, and, ah, that's where she really wanted it, and that's what we did.

The Foundation also ignores Tribble's record of her visit with Bertha which states, "She is concerned about the bonds to the Baptist Board. As they become due she is cashing them in and keeping them."

¶24. The Foundation admits that "the record is devoid of any evidence of malicious, fraudulent or any overtly wrongful behavior on the part of Dr. Gandy. . . ." But later the Foundation asserts that "[h]is actions by allowing Mrs. Tribble to alter the form of investments so as to deplete and substantially diminish the bequest to the Mississippi Baptist Foundation was [sic] improper." Again, the Foundation ignores the fact that Bertha initiated this plan "to deplete and substantially diminish [its] bequest. . . ." By doing so, it also ignores Bertha's obvious intent.

¶25. "For purposes of testamentary construction, it is the responsibility of a reviewing court to determine and respect the intent of a Testatrix." *Homburg*, 697 So. 2d at 1157 (citing *Estate of Williams v.*

*Johnson*, 672 So. 2d 1173, 1175 (Miss. 1996)). This Court must review the decision of the chancellor to "determine if effect was given to the Testatrix's intent. . . ." *Homburg*, 697 So. 2d at 1157 (citing *Tinnin v. First Bank of Miss.*, 502 So. 2d 659, 663 (Miss. 1987)).

¶26. The chancellor's ruling in this case honors Bertha's intent. We find no merit to this assignment of error.

### III. WHETHER THE LOWER COURT ERRED AS A MATTER OF EQUITY BY ALLOWING THE CONSERVATOR WITH A CONFLICT OF INTEREST TO THE BENEFICIARY UNDER THE WILL TO REAP SUBSTANTIAL BENEFIT FROM HIS CHANGING THE FORM OF INVESTMENTS IN HIS WARD'S ESTATE.

¶27. This issue has been incorporated in the discussion above, but it is necessary to reiterate certain points. The Foundation insinuates that the executor committed sins of unclean hands, self-dealing, and various malfeasances. We find no facts to substantiate these accusations. As mentioned above, even the Foundation admits that "the record is devoid of any evidence of malicious, fraudulent or any overtly wrongful behavior on the part of Dr. Gandy. . . ." The Foundation asserts, however, that "[h]is actions by allowing Mrs. Tribble to alter the form of investments so as to deplete and substantially diminish the bequest to the Mississippi Baptist Foundation was [sic] improper." Again, the Foundation ignores the fact that Bertha initiated through Tribble this investment plan with Trustmark.

¶28. It should also be noted that no corporate bonds were ever sold during Gandy's conservatorship. The disposal of any municipal bonds occurred only as the result of maturity or call. With regard to the disposal of municipal bonds, the Estate's expert, Dr. Neely, testified as follows:

> Mr. Mills: Okay. You mentioned matured or were called. Did you review the documents to make a determination as to whether any of these assets were disposed of prior to maturity or a call by the issuer?
>
> Dr. Neely: I did. There were no sales prior to a call or maturity. So, they were all, essentially, forced transactions.
>
> Mr. Mills: It's fair to say that they were all redeemed in the normal course of business at the time required?
>
> Dr. Neely: That's right.
>
> Mr. Mills: No discretion on the part of the estate?
>
> Dr. Neely: No, none.

¶29. It is undisputed that the residual beneficiaries benefitted from the investment plan initiated by Bertha. Nevertheless, it is clear that Gandy exercised no control over this investment plan and did not act to benefit himself. Tribble testified that "[Gandy] and [Tribble] never discussed changing anything. He never directed [her] to make any type of change. Everything continued exactly the way it was before [Bertha] became sick."

¶30. The record is devoid of any evidence that Gandy exerted undue influence on Bertha or that he did anything which is deemed improper by this Court. We, therefore, find no merit to this assignment of error.

## CONCLUSION

¶31. We find no merit to the arguments set forth by the Foundation and affirm the judgment of the Chancery Court of Madison County.

¶32. **AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**