IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 16, 2004 Session

## IN RE ESTATE OF EDWARD LOUIS GREENAMYRE

**Appeal from the Chancery Court for Putnam County**
**No. 2002-76     Vernon Neal, Chancellor**

---

**No. M2003-00964-COA-R3-CV - Filed December 7, 2005**

---

FRANK G. CLEMENT, JR., J., concurring and dissenting, in part.

The majority has provided a well reasoned opinion, based upon a strict interpretation of *In re Estate of Hume*, 984 S.W.2d 602, 605 (1999), concluding that the sale and reorganization of other assets and bank accounts by the court appointed conservator effected an ademption by extinction of several of Mr. Greenamyre's testamentary bequests.   I, however, submit a strict interpretation of *Hume* is not required.

Being fully aware of the strictures of the longstanding doctrine of *stare decisis et non quieta movere* embodied in *Payne v. Johnson*, 2 Tenn. Cas. (Shannon) 543, 543 (1877), I am of the opinion the material facts of this case and those of *In re Estate of Hume* are so disparate they permit this court to step beyond the shadow of the inflexible "in specie" doctrine by distinguishing the facts. Doing so is not an uncommon practice.  Tennessee's ademption landscape is rich with rulings based upon the well recognized protocol of "distinguishing the facts" of each case. *See Rhodes v. Kebke*, 167 S.W.2d 345, 349-50 (Tenn. 1943) (holding an ademption had not occurred based upon a finding that although the testator no longer had a legal interest in specifically bequeathed shares of stock at his death, he had an equitable interest therein which "ought to pass to the beneficiary under the terms of the will"); *Wiggins v. Cheatham,* 225 S.W. 1040, 1042 (Tenn. 1920) (holding the bequest of a liquor business had not been adeemed, stating: "the fact that the testator was not actually engaged in business at the time of his death did not destroy the specific character of the property intended to be bequeathed in his will . . ." because it "was subject to identification."); *Baldwin v. Davidson,* 267 S.W.2d 756, 759 (Tenn. Ct. App. 1954) (holding there was no ademption due to the change of the subject of the bequest from a partnership to a corporation where the will bequeathed the testator's interest in the partnership, noting "the identity of the thing given, the subject of the legacy, has been substantially preserved"); *Bedford v. Bedford,* 274 S.W.2d 528 (Tenn. Ct. App. 1954) (holding that only a partial ademption had occurred where the deceased devised life estates in specific property to three beneficiaries and thereafter deeded to one of the beneficiaries a part of the land; finding that the deed resulted in a partial ademption by satisfaction (distinguished from extinction) of the devise to the devisee who received the deed, but did not adeem the devise of the remainder of the land to the other devisees).

Another example of distinguishing the facts is *In re Estate of Rutledge*, No.85-338-II, 1986 WL 6063 (Tenn. Ct. App. May 29, 1986), wherein the court was presented with two ademption issues. One pertained to real property devised in the will, which had been disposed of by the testatrix. The other pertained to personalty disposed of by the conservator for the testatrix without the knowledge or consent of the testatrix. The *Rutledge* court treated the dispositions differently, holding that the acts by the testatrix caused an ademption, yet the acts by the conservator did not.

The relevant provisions of the Rutledge will directed the Executrix to sell all real property, and after the payment of expenses, give the residue of the proceeds to named beneficiaries. The will also specifically bequeathed personal property – diamond ring, dinner ring, silver service, certificates of deposit, household furnishings, etc. – to other named beneficiaries. As the petition to construe the Rutledge will revealed, all of the property bequeathed or devised in the will had been sold prior to the testatrix' death. As a consequence, the estate consisted of cash and certificates of deposit. The trial court found the testatrix sold her real property and transferred money from bequeathed designated bank accounts to other investment instruments. It also found the conservator sold the diamond ring, the dinner ring, the sterling silver service, and the household furnishings bequeathed in the will. Based upon these findings, the trial court held an ademption had occurred as to the property disposed of by the testatrix, but the transactions by the conservator did not cause an ademption. As a consequence of these findings and holding, the trial court ordered the executrix to pay the respective legatees the amount for which the personalty was sold, which was affirmed by this court. *Rutledge,*1986 WL 6063, at * 3.[1]

Based upon the recognized practice of distinguishing the facts in ademption cases, we may distinguish the significant factual differences between Mr. Hume's and Mr. Greenamyre's estates. Unlike Mr. Greenamyre, Mr. Hume was *sui juris* at all times. Additionally, the ademption in the Hume estate was a direct result of an act and omissions by Mr. Hume. The devised property was voluntarily encumbered by Mr. Hume while he was *sui juris*, the default on the note secured by the property occurred while he was *sui juris*, the foreclosure occurred while Mr. Hume was *sui juris*, and he remained *sui juris* until his death.

The facts of Mr. Greenamyre's case are entirely different. Mr. Greenamyre was not *sui juris* at any time material to the issues. Most significantly, he was a ward of a conservatorship for his person and property when the disputed transactions took place. Moreover, Mr. Greenamyre had no involvement, direct or indirect, in the transactions. All sales and transfers of the assets at issue were

---

[1]This court reasoned it was insufficient to contend that the absence of the object of a specific bequest from a testator's estate – the diamond ring, dinner ring, silver service and household items – by whatever means, constitutes an ademption. *Rutledge,* 1986 WL 6063, at * 4. Specifically, we held "the absence of the thing from the estate *must result from an act of the testator or other person acting with the knowledge and consent of the testator*." (emphasis added) *Id*. Obviously, a strict interpretation of the "in specie" doctrine adopted by the Supreme Court in *In re Estate of Forest Hume* in 1999 would require a different holding by this court today. The other issue in *Rutledge* involved the sale of property by the testatrix. We affirmed the finding of an ademption as to property that was sold by the testatrix. *Rutledge,* 1986 WL 6063, at * 4.

the acts of a court-appointed fiduciary, a conservator,[2] without the knowledge or consent of Mr. Greenamyre. In fact, it was legally impossible for Mr. Greenamyre to object or consent to the transactions because Mr. Greenamyre was previously declared a disabled person subject to a conservatorship.

It is, or should be, of significance that the ademption at issue was not the result of any act or omission by Mr. Greenamyre.[3] Indeed, Mr. Greenamyre's only act or omission relevant to the issue was to fall victim to infirmities of age, which necessitated that he be placed in a nursing home and have a conservator appointed to handle all of his legal and personal affairs.

The principle upon which the *Hume* court applied the "in specie" doctrine was that it matters not that the ademption was a result of an act by the testator. The ademption in *Hume* was, however, a direct result of an act by Mr. Hume and subsequent omissions by Mr. Hume. The "act" was when Mr. Hume encumbered the real estate, which put the resulting foreclosure in play. The "omissions" include Mr. Hume's failure to pay the note secured by the devised property and his subsequent failure to revise the will to remedy the effect of the ademption. Accordingly, the facts before the *Hume* court involved a *sui juris* testator who committed an act and at least two omissions that caused the ademption. Accordingly, by taking a strict interpretation of *Hume* and the doctrine of *obiter dictum*, it appears the adoption of the "in specie" doctrine is *obiter dictum*, at least to the extent the testator was not *sui juris* when the transactions occurred, because it was not essential to the determination in *Hume*.[4]

---

[2]No one contends the conservator acted improperly, and no impropriety should be inferred from this opinion. To the contrary, it appears the conservator's actions were well intended.

[3]Prior to the adoption of the "in specie" doctrine by the *Hume* court, ademption was based upon the doing of some act by the testator. PRITCHARD ON WILLS AND ADMINISTRATION OF ESTATES, which is recognized by probate judges and practitioners as the leading authority on probate matters and the administration of estates in Tennessee, provides that an ademption is "the extinction, alienation, withdrawal, or satisfaction of the legacy *by some act of the testator by which an intention to revoke is indicated*; the doing of some act with regard to the subject matter which interferes with the operation of the will. (emphasis added) PRITCHARD ON WILLS AND ADMINISTRATION OF ESTATES, § 486 (JACK W. ROBINSON, SR. & JEFF MOBLEY, 5th ed. 1994)(citing *Wiggins v. Cheatham*, 225 S.W. 1040 (Tenn. 1920); *American Trust & Banking Co. v. Balfour*, 198 S.W. 70 (Tenn. 1917)).

[4]In *State of Tennessee, Department of Children's Servs. v. B.F.*, No. E2004-00338-COA-R3-PT, 2004 WL 2752808, *4 (Tenn. Ct. App. Oct. 2, 2004), DCS contended that in *State v. Haynes*, No. 01C01-9611-CC-00494, 1998 WL 307949 (Tenn. Crim. App. June 12, 1998) the Tennessee Court of Criminal Appeals ruled "there is no distinction in the business records hearsay exception between admission of the actual records and admission of testimony based on the records." This court in *B.F.* concluded the *Haynes* court had not addressed the merits of the business records issue; therefore, any comments it made in that regard were *obiter dictum* and as such, did not constitute binding precedential authority. *Id.* (citing *Shepherd Fleets, Inc. v. Opryland USA*, 759 S.W.2d 914, 921 (Tenn. Ct. App. 1988)). Significantly, this court went on to observe that the cases relied on in *Haynes* were factually distinguishable from *B.F. Id.* Of course, we are not free to disregard directives when the Supreme Court is speaking directly on the matter before it and is seeking to give guidance to the bench and bar. *See Holder v. Tennessee Judicial Selection Comm'n*, 937 S.W.2d 877, 881-82 (Tenn. 1996).

The critical distinguishing factors present in *Hume* and not present here are legal competency and the ability or lack thereof of the testator to remedy the impending ademption by revising the will. Mr. Hume could have but did not remedy the ademption. Mr. Greenamyre could not; in fact, it was a legal impossibility.

Application of the "in specie" doctrine by the *Hume* court was logical and equitable, because Mr. Hume, being *sui juris* could have, but did not, revise his will after the foreclosure. Nevertheless, I am confident the *Hume* court would not have applied the "in specie" doctrine to Mr. Greenamyre's set of facts. I submit the apparent broad application of the holding in *Hume* is the unintended result of the *Hume* court painting with too broad a brush. It is for such artistry we have the safeguard of *obiter dictum*.

As the majority noted, it is significant but not controlling that the General Assembly recently expressed its intention that the harsh "in specie" doctrine not apply to persons like Mr. Greenamyre.[5] This intent is evident from adoption of relevant parts of the Uniform Probate Code, which favor the "intention of the testator" rule instead of the harsh "in specie" rule when a devise or bequest is sold by a conservator for an incapacitated person who cannot approve or object to the fiduciary's acts. *See* Tenn. Code Ann. § 32-3-111 (Supp. 2005); *see also* The Uniform Probate Code, Sec. 2-606 (amended 1997), 8 U.L.A. 37 (Supp. 2002). Moreover, Tenn. Code Ann. § 32-3-111 provides guidelines when specifically bequeathed or devised property has been changed by a conservator or attorney-in-fact.[6] *Id.*

---

[5]Since the effective date of the legislation was subsequent to the death of Mr. Greenamyre, the legislation can not be applied retroactively to this estate.

[6]The relevant parts of the Uniform Probate Code adopted by the General Assembly, which pertain to specific devises and bequests by persons who subsequently become incapacitated provide:

(a) A specific legatee or devisee has a right to the specifically gifted or devised property in the testator's estate at death or if the property has been disposed of and a contrary intention is not manifest during the testator's lifetime:

(1) Any balance of the purchase price, together with any security interest, owing from a purchaser to the testator at death by reason of sale of the property;

(2) Any amount of a condemnation award for the taking . . . unpaid at death;

(3) Any proceeds unpaid at death on fire or casualty insurance on, or other recovery for injury to, the property; and

(4) Property owned by the testator at death and acquired as a result of foreclosure, or obtained in lieu of foreclosure, of the security interest for a specifically devised obligation.

(b) If specifically devised or bequeathed property is sold or mortgaged by a conservator or by an agent acting within the authority of a durable power of attorney for an incapacitated principal, or if a condemnation award, insurance proceeds, or recovery for injury to the property are paid to a conservator or to an agent acting with the authority of a durable power of attorney for an incapacitated principal, the specific devisee has the right to a general pecuniary devise equal to the net sale price, the amount of the unpaid loan, the condemnation award, the insurance proceeds, or the recovery.

(c) The right of a specific legatee or devisee under subsection (b) is reduced by any right the legatee or devisee has under subsection (a).

(continued...)

-4-

With the adoption of the Uniform Probate Code, Tennessee has joined a number of jurisdictions that apply the less harsh "intent of the testator" doctrine when property is sold by a guardian or conservator of an incapacitated, incompetent or disabled person. Iowa, in *Estate of Bierstedt*, 119 N.W.2d 234 (1963), reversed an earlier ruling of total ademption, and held that a guardian's sale of a testator's farm while the testator was incompetent did not effect a total ademption. Labeling this the "intention" rule, the Iowa court explained, "to hold otherwise would allow the guardian, either intentionally or unintentionally, to disrupt the dispositive scheme of the testator as evidenced by his last competent act in relation to the specific devise." *Bierstedt*, 119 N.W.2d at 238. Reversing a decree of partial ademption of a devise, which was the incompetent testatrix' home, California, in *Estate of Mason,* 397 P.2d 1005 (Cal.1965), reasoned that an *incompetent testator lacks intent to adeem and the opportunity to avoid the effect of ademption by making a new will*, and that a contrary rule would allow the guardian, by changing the form of guardianship property, to determine the distribution of the estate. "*To permit such ademption,*" said the court, "*would allow the guardian to destroy his ward's testamentary plan. . . .*" *Id*. (emphasis added); see also *Matter of Estate of Warren*, 344 S.E.2d 795 (N.C. Ct. App. 1986); 84 ALR4th 455 (upholding the pronouncement that the principle of ademption does not apply when the testator becomes incompetent and the subject matter of a specific bequest or devise is sold by a guardian or conservator); *Lewis v. Hill,* 56 N.E.2d 619, 622 (Ill. 1944) (stating the principle arises from the recognition that the sale of property by a guardian or conservator is "in no sense to be regarded as a conveyance by the testatrix"). Several jurisdictions, perceiving harshness in the strict application of the rule to such circumstances, and realizing that favoritism or greed may be present, have adopted special rules to the effect that the representative's conduct does not necessarily or entirely adeem the legacy or bequest. *See Jeffrey I. Ghent, Annotation, Ademption or Revocation of Specific Devise or Bequest by Guardian, Committee, Conservator, or Trustee or Mentally or Physically Incompetent Testator*, 84 A.L.R.4th 462 (1991).

For the reasons stated above, I respectfully dissent from that part of the majority opinion that upholds the ademption. With that exception, I concur with the majority.

_____

FRANK G. CLEMENT, JR., JUDGE

---

[6](...continued)

. . . .

(e)   For the purposes of the references in subsection (b) to an agent acting within the authority of a durable power of attorney for an incapacitated principal:

     (1) "Incapacitated principal" means a principal who is an incapacitated person;

     (2) No adjudication of the principal's incapacity need occur before death; and

     (3) The acts of an agent within the authority of a durable power of attorney are presumed to be for an incapacitated principal, such presumption rebuttable by clear and convincing evidence of capacity.

Tenn. Code Ann. § 32-3-111.